# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

TIMOTHY LAMONTE BLANTON, JR.,

Defendant-Appellee.

FOR PUBLICATION
August 30, 2016
9:05 a.m.

No. 328690
Kent Circuit Court
LC No. 14-005489-FC

Before: SAAD, P.J., and BORRELLO and GADOLA, JJ.

BORRELLO, J.

The prosecution appeals by leave granted[1] the June 19, 2015 circuit court order granting defendant's motion to withdraw his guilty plea to charges of armed robbery, MCL 750.529; assault with intent to do great bodily harm, MCL 750.84; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, on the basis that the plea proceeding was defective. The trial court denied the prosecution's motion for reconsideration on July 24, 2015. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Defendant was originally charged with one count each of assault with intent to murder, MCL 750.83; assault with intent to rob while armed, MCL 750.89; felon-in-possession of a firearm, MCL 750.224f; and felony-firearm in connection with events that occurred on May 19, 2014, in Grand Rapids, Michigan. He was charged as a second-offense habitual offender, MCL 769.10. Defendant was bound over for trial following a preliminary examination.

Following his bindover, the record reflects that defendant was originally offered a plea deal that would have allowed him to plead guilty to the assault with intent to murder, felon-in-possession, and felony-firearm charges in exchange for the prosecution dropping the assault with intent to rob while armed charge and the second-offense habitual offender enhancement. However, at a status conference on July 16, 2014, defendant rejected that plea offer.

---

[1] *People v Blanton, Jr.*, unpublished order of the Court of Appeals, entered October 19, 2015 (Docket No. 328690).

-1-

Defendant was subsequently offered a second plea deal that would allow him to plead guilty, on an amended Information, to charges of armed robbery, assault with intent to do great bodily harm, and felony-firearm, in exchange for the prosecution dropping the assault with intent to murder, assault with intent to rob while armed, and felon-in-possession charges as well as the second-offense habitual offender enhancement. Additionally, the prosecution agreed that the sentencing guidelines range would be 171 to 285 months imprisonment. Defendant expressed his desire to accept that plea offer.

A plea proceeding was then held on September 22, 2014, during which the terms of the second plea offer were placed on the record. The trial court placed defendant under oath. Thereafter, the trial court advised defendant that because he was on probation at the time he allegedly committed the charged offenses, he could be punished "up to the statutory maximum for whatever [he was] on probation for," and that any such sentence would "run concurrently, meaning at the same time, as any counts in this case except for the felony firearm." Defendant expressed his understanding of these facts. The trial court then advised defendant that, upon a conviction for armed robbery, he faced a maximum possible penalty of life imprisonment. Defendant expressed his understanding. The trial court then advised defendant that, upon a conviction for assault with intent to do great bodily harm, he faced a maximum possible penalty of 10 years' imprisonment. Without asking if defendant understood this fact, the trial court then advised defendant that he was also charged with felony-firearm, but did not advise defendant of the maximum possible penalty for this offense or the fact that the penalty would run consecutive to the other sentences. The trial court then simply asked defendant if he "underst[ood] the nature of the charges." Defendant responded affirmatively.

The trial court next advised defendant of the rights he would be giving up by pleading guilty, as well as the fact that once the plea was accepted, defendant did "not have any automatic right to withdraw [the] plea" or change his mind. Defendant expressed his understanding. Defendant further acknowledged that he was not forced or threatened to enter the plea. After satisfying itself that the pertinent information had been discussed, the trial court asked defendant:

> To the charge of armed robbery, assault with intent to do great bodily harm, and felony firearm on May 19th, 2014, how do you plead; guilty or not guilty?

Defendant responded "guilty, your honor." After eliciting a factual basis for the plea,[2] the trial court found that defendant's plea was "knowingly, intelligently, and voluntarily made" and accepted the plea. The trial court "adjudicate[d]" defendant guilty.[3]

---

[2] Defendant admitted that he was present in Grand Rapids on May 19, 2014, that he went to 506 Dickinson Street, that he was armed with a firearm, and that he shot the victim with the intent to steal the victim's "sunglasses and a cell phone."

[3] A written plea agreement, which was signed by defendant and acknowledged at the plea proceeding, was placed in the lower court record. The plea agreement does not reference the penalties defendant faced by pleading guilty.

Sentencing was thereafter held on October 20, 2014. At the outset of the hearing, defendant entered a guilty plea to his pending probation violation. Ultimately, defendant was sentenced to 5 to 25 years' imprisonment for the probation violation; 5 to 10 years' imprisonment for the assault with intent to do great bodily harm conviction; 20 to 50 years' imprisonment for the armed robbery conviction; and two years' imprisonment for the felony-firearm conviction. The former three sentences were ordered to be served consecutive to the felony-firearm sentence.

Following his sentence, defendant requested, and was appointed, appellate counsel. Then, on April 17, 2015, defendant, through his appellate counsel, moved in the trial court to withdraw his guilty plea. As a basis for withdrawing his plea, defendant argued that his plea was not knowingly, understandingly, and voluntarily entered because the trial court, during the plea proceeding, failed to advise him of the maximum possible penalty he faced upon conviction of the felony-firearm charge, or that such sentence would run consecutive to the other sentences. Such failure to advise defendant was in violation of MCR 6.302(B)(2). Accordingly, because there was "an error in the plea proceeding," he was entitled, under MCR 6.310(C), to withdraw his plea.

In response to defendant's motion, the prosecution conceded that the trial court had erred in failing to advise defendant during the plea proceeding of the maximum possible penalty for the felony-firearm offense or that the sentence for that offense would run consecutive to the other sentences. However, while the prosecution conceded that the error entitled defendant to withdraw his guilty plea to the felony-firearm charge if he so chose, it disputed the notion that defendant was entitled to withdraw "all his pleas to the charged offenses." Instead, as the prosecution argued, because defendant had been properly advised regarding the armed robbery and assault with intent to commit great bodily harm charges, and because any failure to inform defendant regarding the felony-firearm charge was "extrinsic" to those other charges, defendant was not entitled to withdraw his guilty plea to those other charges. Thus, the prosecution requested that defendant's motion to withdraw be denied as it pertained to the armed robbery and assault with intent to commit great bodily harm convictions.

A hearing on defendant's motion was held on June 19, 2015. At the outset, the trial court recognized that there was "no dispute that the plea proceeding was defective in some way because [defendant] was not informed about the . . . penalty regarding the felony[-]firearm" charge. As to the issue of whether defendant was entitled to withdraw his plea in total or only with respect to the felony-firearm charge, the trial court agreed with defendant's position that the plea agreement was a "comprehensive deal" which was not divisible:

> I agree with the defendant in this case. A plea agreement, I think, is a comprehensive deal. There's a plea—Michigan Court Rule 6.310(C) controls this case—or controls this issue. If there's an error in the plea proceeding, it allows the withdrawal of the plea. And I do find the defendant's position persuasive that pleas are comprehensive deals. You can't just take one part out because it's a negotiated process. So, [defendant] will be allowed to withdraw his entire plea . . . .

-3-

The trial court subsequently effectuated its oral ruling by entering two written orders on June 19, 2015. Specifically, in one, the trial court granted defendant's motion to withdraw his plea in full. In the other, the trial court vacated the judgment of sentence and reopened the case for further proceedings.

The prosecution moved the trial court for reconsideration on July 10, 2015. As a threshold matter, the prosecution argued that the trial court erred by simply granting defendant's motion to withdraw his plea instead of following the procedure set forth in MCR 6.310(C), which provides that "if the trial court determines that there was an error in the plea proceeding that would entitle the defendant to have the plea set aside, the court must give the advice or make the inquiries necessary to rectify the error and then give the defendant the opportunity to elect to allow the plea and sentence to stand or to withdraw the plea." By granting the motion without even asking defendant what his preference was, the trial court left open the possibility that defendant could be tried and convicted of *all* counts (including those dropped as part of the plea) and sentenced to a harsher punishment, only to then insist that he be reoffered the plea deal because he never rejected it on the record. Thus, at a minimum, a hearing needed to be held wherein defendant could be advised of his rights and allowed to choose whether to withdraw his plea or allow it to stand. Next, as it pertained to his right to withdraw the plea, the prosecution maintained that the trial court had erred in allowing defendant to withdraw his entire plea; rather, "the proper remedy" was "to allow him to withdraw the plea to the felony[-]firearm count but not his pleas to the other two counts[.]" In the interest of "maintaining the otherwise valid pleas" and to dispel any concern that allowing defendant to only withdraw his plea to the felony-firearm charge could result in his admissions from the plea proceeding being used against him in a subsequent trial on that charge, the prosecution agreed to drop the felony-firearm charge if the trial court granted its motion for reconsideration. As the prosecution reasoned, "[o]nce the felony[-]firearm count has been dismissed, the issues with the improper plea proceeding will be moot, and defendant will have no basis to challenge his other two pleas."

While the prosecution's motion for reconsideration was pending, a status conference was held on July 23, 2015. The trial court indicated on the record that it would be denying the motion for reconsideration, but acknowledged that it had failed to comply with the process set forth in MCR 6.310(C). As such, after placing defendant under oath, the trial court briefly advised defendant of the consequences of withdrawing his plea; namely, that if another plea deal could not be reached, he would be tried and, if convicted, the penalties would be "much more severe than the sentence that was issued" previously. After defendant expressed that he still wished to withdraw his plea, the trial court granted that request.

Ultimately, the trial court entered an order on July 24, 2015, denying the prosecution's motion for reconsideration. In so doing, the trial court concluded:

> The People do not provide any specific case, statute, or court rule to support their position that the defendant should only be allowed to withdraw the "defective" portion of his plea. The Court is not aware of any case law in Michigan which supports the People's position. However, the Court finds that plea agreements are "package deals" and indivisible. Although the Court knows of no binding precedent in Michigan on this issue, the Court finds the Supreme

-4-

Court of Washington's analysis in the [sic] State v Turley, 149 Wash 2d 395; 69 P 3d 338 (2003) persuasive.

Based on the above analysis, the People's motion for reconsideration is respectfully denied.

The prosecution subsequently filed an application for leave to appeal the trial court's June 19, 2015 decision which, as noted above, this Court granted. In the meantime, the trial court granted the prosecution's motion to stay the proceedings.

## II. STANDARD OF REVIEW

We review a trial court's ruling on a motion to withdraw a plea for an abuse of discretion. *People v Brown*, 492 Mich 684, 688; 822 NW2d 208 (2012). Likewise, we review a trial court's ruling on a motion for reconsideration for an abuse of discretion. *People v Perkins*, 280 Mich App 244, 248; 760 NW2d 669 (2008). "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *People v Young*, 276 Mich App 446, 448; 740 NW2d 347 (2007). To the extent resolution of this issue involves interpretation of the Court Rules, such interpretation presents a question of law that we review de novo. *People v Lee*, 489 Mich 289, 295; 803 NW2d 165 (2011).

## III. ANALYSIS

A defendant's ability to withdraw a guilty or nolo contendere plea is governed by the Michigan Court Rules. Under those Rules, a defendant has an absolute right to withdraw "any plea until the court accepts it on the record." MCR 6.310(A). However, "[t]here is no absolute right to withdraw a guilty plea once it has been accepted." *People v Gomer*, 206 Mich App 55, 56; 520 NW2d 360 (1994). Instead, pursuant to MCR 6.310, a defendant's ability to withdraw a plea after the trial court has accepted it is limited to certain circumstances. Specifically, as relevant to this case, a motion to withdraw a guilty plea after sentencing is governed by MCR 6.310(C), which provides, in relevant part:

> The defendant may file a motion to withdraw the plea within 6 months after sentence . . . If the trial court determines that there was an error in the plea proceeding that would entitle the defendant to have the plea set aside, the court must give the advice or make the inquiries necessary to rectify the error and then give the defendant the opportunity to elect to allow the plea and sentence to stand or to withdraw the plea. . . . [MCR 6.310(C).]

In other words, pursuant to MCR 6.310(C), "[a] defendant seeking to withdraw his or her plea after sentencing must demonstrate a defect in the plea-taking process." *Brown*, 492 Mich at 693.

At the outset, as the trial court found and the prosecution concedes, there was a clear defect in the plea-taking process in this case vis-á-vis the felony-firearm charge. "Guilty and no-contest proceedings are governed by MCR 6.302." *People v Cole*, 491 Mich 325, 330; 817 NW2d 497 (2012). "The first sentence of [MCR 6.302(A)] provides that a 'court may not accept

a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate." *Id.* at 330-331; see also *Brown*, 492 Mich at 688. In order for a plea to be voluntary and understanding, the defendant "must be fully aware of the direct consequences of a conviction . . . ." *Cole*, 491 Mich at 333 (quotation marks and citations omitted). The penalty to be imposed is "[t]he most obvious 'direct consequence' of a conviction . . . ." *Id.* at 334.

Accordingly, under MCR 6.302(B)(2), a trial court must, as part of the plea colloquy, inform the defendant of "the maximum possible prison sentences for the offense *and any mandatory minimum sentence* required by law . . . ." (Emphasis added). Additionally, because "the 'understanding, voluntary, and accurate' components of [MCR 6.302(A)] are premised on the requirements of constitutional due process," a trial court may, in certain circumstances, be required to inform a defendant about facts not explicitly required by MCR 6.302. *Cole*, 491 Mich at 332. For example, although not explicitly required by MCR 6.302(B), it is well-settled that a trial court must inform the defendant of any "consecutive and/or mandatory sentencing" requirements. *People v Mitchell*, 102 Mich App 554, 557; 302 NW2d 230 (1980), rev'd in part on other grounds 412 Mich 853 (1981).[4] Where a defendant is not fully informed about the penalties to be imposed, there is a "clear defect in the plea proceedings" because the defendant is unable "to make an understanding plea under MCR 6.302(B)." *Brown*, 492 Mich at 694. A plea that is not voluntary and understanding "violates the state and federal Due Process Clauses." *Id.* at 699, citing US Const, Ams V and XIV and Const 1963, art 1, § 17.

At the time of the sentencing,[5] the felony-firearm statute, MCL 750.227b, provided, in relevant part:

> (1) A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of [MCL 750.223, MCL 750.227, MCL 750.227a or MCL 750.230], is guilty of a felony, and shall be imprisoned for 2 years. . . .
>
> (2) The term of imprisonment prescribed by this section is in addition to the sentence imposed for the conviction of the felony or the attempt to commit the felony, and shall be served consecutively with and preceding any term of imprisonment imposed for the conviction of the felony or attempt to commit the felony.

The plain language of MCL 750.227b thus makes clear that when a defendant carries a firearm during the commission of a felony, he is subject to a *mandatory* two-year term of imprisonment, such term to be served "consecutively with and preceding any term of

---

[4] Pursuant to MCR 7.215(J)(1), *Mitchell* is not precedentially binding because it was published before November 1, 1990. Nonetheless, this Court may find its reasoning to be persuasive.

[5] MCL 750.227b was amended effective July 1, 2015, but the amendment did not alter the substantive provisions at issue in this case. See 2015 PA 26.

imprisonment imposed" for the underlying felony. See *People v Clark*, 463 Mich 459, 463-464; 619 NW2d 538 (2000). Accordingly, to comply with MCR 6.302(B), the trial court, as part of the plea colloquy in this case, should have advised defendant that by pleading guilty to felony-firearm, (1) he would be sentenced to a mandatory two-year term of imprisonment and (2) that term of imprisonment would be served first, with the concurrent sentences for armed robbery and assault with intent to commit great bodily harm to be served consecutively thereto. *Mitchell*, 102 Mich App at 557. There is no dispute that the trial court failed to do so. Consequently, there was a "clear defect in the plea proceedings" because defendant, unaware of the full nature of the penalty for felony-firearm, could not make an understanding and voluntary plea as required by MCR 6.302(B). *Brown*, 492 Mich at 694. See *Mitchell*, 102 Mich App at 557 (remanding the case to the trial court so that defendant could be properly advised that "a felony-firearm conviction carries a mandatory two-year sentence which must be served before, rather than concurrently with, any sentence imposed with regard to his plea on the murder charge").

Given the above defect in the plea taking process, the issue before this Court is the remedy to which defendant is entitled. As noted above, pursuant to MCR 6.310(C), a defendant, upon showing a defect in the plea taking process, is entitled to have the error corrected by the trial court and to thereafter have "the opportunity to elect to allow the plea and sentence to stand or to withdraw the plea." See also *Brown*, 492 Mich at 702. However, the parties dispute whether this rule allows defendant to withdraw his entire plea or only his plea to the felony-firearm charge. We are unaware of any Michigan caselaw addressing this question.

The prosecution asserts that the matter can be resolved simply by looking to the plain language of MCR 6.302 and MCR 6.310. Specifically, as the prosecution points out, MCR 6.302 and MCR 6.310 each make "repeated references" to the singular terms "plea" or "plea proceeding," as opposed the plural "pleas" or "plea proceedings." It follows, according to the prosecution, that "a defect in the plea proceeding would necessarily reference a defect as to the particular plea, not as to any plea entered during a single hearing." In other words, the prosecution appears to argue that the use of the singular terms denotes an intention by the drafters of the Court Rules to treat a plea involving multiple charges as divisible, such that a defect in the plea proceeding as to one charge does not render the proceeding defective as to the other charges.

The prosecution's argument lacks merit. As a threshold matter, to the extent our Supreme Court's intent can be gleaned from its use of the singular terms "plea" and "plea proceeding" in the Court Rules, the intent espoused would be the exact opposite of what the prosecution suggests—i.e., the use of the terms in their singular form would denote an intention to treat a "plea" pertaining to multiple charges as part of one, singular undivided whole and therefore not divisible according to the specific offenses. However, the mere fact that the Supreme Court used singular terms in the Court Rules is ultimately not that helpful in determining intent, since MCR 1.107 expressly provides that "[w]ords used in the singular also apply to the plural, where appropriate." As such, the Supreme Court's references in MCR 6.302 and MCR 6.310 to the singular terms "plea" and "plea proceeding" do not necessarily resolve the issue. Thus, given the absence of a clear directive in the Court Rules, reference to the rules does not end our inquiry.

While we are not aware of any relevant Michigan case law addressing this issue, in the seminal case of *State v Turley*, 149 Wash 2d 395; 69 P3d 338 (2003)—relied upon by the trial court—the Washington Supreme Court addressed the very issue currently before this Court.[6]  *Id.* at 398.  In *Turley*, the defendant pleaded guilty to two charges, but was erroneously advised at the plea hearing regarding the mandatory sentencing requirements of one of the charges.  *Id.* at 396.  When he was later sentenced pursuant to those mandatory requirements, he moved to withdraw his plea pursuant to a court rule which provided that the trial court shall allow a defendant to withdraw a guilty plea "whenever it appears that the withdrawal is necessary to correct a manifest injustice."  *Id.* at 397-398.  In so doing, the defendant argued that the plea agreement was indivisible and "because the plea agreement covered both charges, the court should allow him to withdraw both pleas," even though the plea proceeding was defective to only one of the charges.  *Id.* at 397.  The trial court agreed that the defendant's plea was not intelligent and voluntary, but allowed him to withdraw the plea only as it pertained to the charge for which the plea proceeding was defective.  *Id.* at 397-398.  The Washington Court of Appeals affirmed.  *Id.* at 398.

On subsequent appeal, the Washington Supreme Court addressed the question "whether a trial court may grant or deny a motion to withdraw a plea agreement as to each count separately when the defendant pleaded guilty to multiple counts entered the same day in one agreement." *Id.*  The Court answered that question "in the negative."  *Id.*  The Court observed that "[a] plea agreement is essentially a contract between a defendant and the State."  *Id.* at 400.  As such, the Court looked to contract principles—specifically, "the intent of the parties"—to determine whether a plea agreement should be considered separable or indivisible.  *Id.*

The Court found several "objective indications of intent" to be relevant to determining the intent of the parties: First, the defendant "negotiated and pleaded to two charges contemporaneously"; second, "[o]ne document contained the plea to and conditions for both charges"; and finally, "[t]he trial court accepted his plea to both charges at one hearing" without separately advising the defendant of the consequences of each individual charge.  *Id.*  Finding no "objective evidence of a contrary intent" in the agreement itself, the Court ultimately concluded that the plea agreement was indivisible and that the defendant "should have been permitted to withdraw both pleas" as a result of the erroneous information given at the plea hearing pertaining to only one of the charges.  *Id.* at 400-401.

Since the Washington Supreme Court's pronouncement in *Turley*, Washington appellate courts have consistently adhered to the principle that where the objective circumstances espouse an intent by the prosecution and defendant to treat a plea agreement to multiple charges as a "package deal," *Turley*, 149 Wash 2d at 400, the plea agreement is indivisible and the defendant is permitted, upon showing a defect, to withdraw the plea in its entirety, even where the defect pertains only to one charge.  See, e.g., *In re Personal Restraint of Shale*, 160 Wash 2d 489, 493-494; 158 P 3d 588 (2007) (finding a plea agreement involving multiple charges to be indivisible

---

[6] Decisions from foreign jurisdictions are not precedentially binding, but may be considered persuasive.  *People v Campbell*, 289 Mich App 533, 535; 798 NW2d 514 (2010).

where the individual pleas were described in different documents but referenced one another); *In re Bradley*, 165 Wash 2d 934, 942-943; 205 P 3d 123 (2009) (finding a plea agreement involving multiple charges to be indivisible even though the crimes were committed three months apart and charged in separate Informations because the objective circumstances evidenced that the pleas "were negotiated as part of a package deal"); *State v Bisson*, 156 Wash 2d 507, 518-520; 130 P 3d 820 (2006) (rejecting the defendant's request to withdraw only that portion of his plea pertaining to sentencing enhancements because the plea agreement was indivisible and the remedy was therefore "restricted to the withdrawal of his plea in its entirety").

Other states have also applied contract principles to determine that a plea agreement is indivisible and therefore not capable of being partially withdrawn. See, e.g., *Whitaker v State*, 881 So 2d 80 (Fla App, 2004) (finding that the trial court erred in granting only partial withdrawal of the defendant's guilty plea because the record demonstrated that the parties intended to negotiate the defendant's pleas to several charges as part of a "package" in exchange for the dismissal of other charges). But see *People v Kazadi*, 284 P 3d 70, 76 (Colo App, 2011) (recognizing that "some jurisdictions allow withdrawal of multiple pleas when one of the pleas was not validly entered and the plea bargain was a 'package deal,' " but declining to also adopt that approach because the Colorado Supreme Court had previously "invalidated one plea but not the other in an alleged 'plea package,' when the basis for voiding one did not necessarily undermine the other").

We conclude that the contractual approach set forth in *Turley* is persuasive. This Court has previously explained that "[c]ontractual analogies may be applied in the context of a plea agreement" if to do so would not "subvert the ends of justice." *People v Swirles (After Remand)*, 218 Mich App 133, 135; 553 NW2d 357 (1996) (citations omitted). See also *People v Martinez*, 307 Mich App 641, 651; 861 NW2d 905 (2014). Given the nature of the plea-bargaining process in Michigan where both parties often tend to negotiate a "package deal," we conclude that adherence to the approach set forth in *Turley* would not "subvert the ends of justice." *Swirles*, 218 Mich App at 651. Moreover, we note that the standard of review in this case is an abuse of discretion standard. *Brown*, 492 Mich at 688. Given that there was no precedential authority on this issue in Michigan, we decline to conclude that the trial court abused its discretion in applying the contractual approach set forth in *Turley*.

Applying the contractual approach to the instant case, the objective facts reveal an intent by the prosecution and defendant to treat the plea agreement as indivisible. *Turley*, 149 Wash 2d at 400. Specifically, defendant was charged with multiple offenses in a single Information; he negotiated with the prosecution to allow him to plead guilty to three charges contemporaneously in exchange for the dismissal of the remaining charges and the habitual offender enhancement; a single document contained the terms of the plea agreement; and the trial court accepted defendant's pleas to all three charges at one hearing. Specifically, at the sentencing hearing, the trial court did not ask defendant his plea to each individual charge; instead, the trial court asked defendant how he pled to the charges and defendant's singular response was "guilty." In other words, the "pleas to multiple counts or charges were made at the same time, described in one document, and accepted in a single proceeding," and were thus part of a "package deal." *Id*. Consequently, defendant asserted a plea of guilty to the entirety of the plea agreement. Neither the trial court nor the State sought from defendant a bifurcation of any of the factual underpinnings for any of the crimes to which he tendered a plea of guilty. As such, the trial

court did not abuse its discretion in allowing defendant to withdraw his plea in its entirety rather than only partially because the plea agreement is indivisible.

Affirmed.

/s/ Stephen L. Borrello
/s/ Henry William Saad
/s/ Michael F. Gadola