# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KELLY CHRISTOPHER WARREN,

        Defendant-Appellant.

UNPUBLISHED
May 17, 2018

No. 333997
Mecosta Circuit Court
LC Nos. 15-008431-FH;
14-008297-FH

Before: GLEICHER, P.J., and M. J. KELLY and CAMERON, JJ.

GLEICHER, J. (*dissenting*).

The issue presented is whether defendant Kelly Warren should be permitted to withdraw his guilty plea due to the trial court's failure to advise him that he was eligible for a consecutive sentence. The majority holds that because consecutive sentencing was a "collateral" consequence of Warren's plea, the trial court had no obligation to inform him of its possible imposition. Rather than relying on an artificial distinction between "direct" and "collateral" consequences, I would hold that a possible consecutive sentence is a fact as important as the maximum penalty for each charge, and therefore an integral component of a voluntary and understanding plea.

I

Kelly Warren was charged with operating a motor vehicle while intoxicated (third offense), MCL 257.625(1), and operating a motor vehicle with a suspended license (subsequent offense), MCL 247.904(1). While on bond for these offenses, he was arrested and charged with repeating the same crimes. Warren pleaded guilty to operating a motor vehicle while intoxicated in both cases. In exchange, the prosecution dismissed the other charges and a habitual offender supplement.

At the plea hearing, the trial court inquired of counsel, "[E]ach of the charges carries with it, absent the habitual, is [sic] a five year maximum charge; is that correct, folks?" The lawyers agreed. Warren responded affirmatively to all the questions asked of him, including that he understood and accepted the plea agreement. No mention was made of a consecutive sentence.

The court sentenced Warren to two consecutive terms of 24 to 60 months' imprisonment. This means that Warren may serve 60 months (five years) on his first sentence before beginning his second sentence, which also may require him to spend five years in prison. The "five year

- 1 -

maximum" disclosed by the trial court was actually a 10-year maximum. Kelly pleaded guilty without knowing a sentence twice as long as he was told was within the trial court's discretion.

## II

To state the obvious, a plea bargain is a bargain. This means that a defendant gives up something (usually freedom), in exchange for something else. For most bargains, in law or in life, the "something else" is well-defined. If I hire someone to take care of my lawn all summer for an agreed price of $500 and he instead charges me $500 per visit, one of us did not understand the deal. The stakes are much higher in a courtroom. That is why clear and long-abiding precedent requires that a court accurately advise a defendant of the price to be paid for a guilty plea: "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v United States*, 397 US 742, 748; 90 S Ct 1463; 25 L Ed 2d 747 (1970). Our Supreme Court specifically embraced this concept (and this exact language) in *People v Cole*, 491 Mich 325, 333; 817 NW2d 497 (2012).

In *Cole*, the Supreme Court acknowledged that other courts have created a distinction between "direct" and "collateral" consequences of a guilty plea. According to the majority, *Cole* supports that because a discretionary consecutive sentence is merely a "collateral" effect of a guilty plea, a court need not warn a defendant of its possibility. I respectfully disagree with this reading of *Cole*. Rather than adopting the "direct" and "collateral" rubric relied on by my colleagues, *Cole* reserved the issue for another day:

> While there is considerable debate about the exact placement of the dividing line between the collateral and direct consequences of a plea, see *Padilla v Kentucky*, 559 US 356, [364] n 8; 130 S Ct 1473; 176 L Ed 2d 284 (2010), we need not explore this oft-nuanced distinction because we agree with the Court of Appeals that mandatory lifetime electronic monitoring is *part of the sentence itself*. [*Cole*, 491 Mich at 334-335 (emphasis in original).][1]

Indeed, *Cole* is entirely consonant with my position that a defendant must be informed of the *true* maximum penalty he or she faces, which includes a possible consecutive sentence:

> To hold otherwise would not only offend due process, but would be inconsonant with the practical rationale underlying the requirement that a plea be knowing and voluntary. When a defendant agrees to plead guilty, he or she is making a bargain, giving up trial rights in exchange for some perceived benefit. In order for a defendant to accurately assess the benefits of the bargain being considered, the defendant must be aware of the immediate consequences that will flow directly from his or her decision. Without information about a consequence of a sentence deemed by our Legislature to be punishment, . . . it cannot be said

---

[1] In *Padilla*, 559 US at 364 n 8, the United States Supreme Court likewise observed that "[t]here is some disagreement among the courts over how to distinguish between direct and collateral consequences," but found the debate irrelevant in that case.

that a defendant was aware of the critical information necessary to assess the bargain being considered. [*Id*. at 337-338.]

Nor has this Court ever held that consecutive sentencing constitutes a mere "collateral consequence" of a guilty plea. In *People v Fonville*, 291 Mich App 363, 385; 804 NW2d 878 (2011), we included the "possibility of imposition of consecutive sentences" in a long list of "[e]xamples of collateral or incidental consequences" that have been identified in other cases. But this was dictum, not a holding. And although this Court has proclaimed that "it is well settled that a trial court must inform the defendant of any 'consecutive and/or mandatory sentencing' requirements,"[2] this, too, is dicta. *People v Blanton*, 317 Mich App 107, 119; 894 NW2d 613 (2016) (citations omitted).

I am unable to locate binding Michigan authority on the question of whether MCR 6.302(B) or the due process clause requires a court to advise a defendant of the possible imposition of a discretionary consecutive sentence before accepting a guilty plea. This caselaw void explains why the Supreme Court ordered that we resolve Warren's appeal by "consider[ing]" both *Blanton* and *People v Johnson*, 413 Mich 487; 320 NW2d 876 (1982), which focused on the court rule governing the procedure for accepting guilty pleas. *People v Warren*, 500 Mich 1056 (2017). Rather than evaluating the question presented based on nonbinding or tangential precedent, I would evaluate Warren's argument on a clean slate.

Before accepting a guilty plea, a court "must advise the defendant . . . and determine that each defendant understands . . . the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law[.]" MCR 6.302(B)(2). In *People v Brown*, 492 Mich 684, 693-694; 822 NW2d 208 (2012) the Supreme Court construed this language to mandate that "before pleading guilty, a defendant must be notified of the maximum possible prison sentence with habitual-offender enhancement because the enhanced maximum becomes the 'maximum possible prison sentence' for the principal offense." The Court explained that "[b]y not telling a defendant the potential maximum sentence" that could be imposed due to the defendant's habitual-offender status, a court fails to advise the defendant of "the true potential maximum sentence." *Id*. at 694 (quotation marks and citation omitted). Informing a defendant of the habitual penalty "accurately reflects the intent of MCR 6.302(B)(2)," the Court explained. *Id*.

The "true potential maximum sentence" faced by a defendant eligible for consecutive sentencing is a total sentence that is substantially longer than the maximum term of concurrent sentences. Here, Warren faces a total of 120 months' imprisonment due to the consecutive nature of his sentences. Had he been sentenced to concurrent terms, his maximum would have been 60 months in prison. It seems to me obvious that MCR 6.302(B)(2) requires notice to a

---

[2] In support of this proposition, the Court cited *People v Mitchell* 102 Mich App 554, 557; 302 NW2d 230 (1980), rev'd in part on other grounds 412 Mich 853 (1981). But *Mitchell* actually held that a court must advise a defendant only of "consecutive and/or mandatory sentencing . . . *ordered by statute*." *Id*. (emphasis added). Here, consecutive sentencing is discretionary.

defendant of a sentencing possibility that could vastly change the amount of time that he or she must serve.[3]

Due process principles compel the same result. A number of courts have held that in order for a plea to be knowingly and voluntarily entered, a defendant must be told of the possibility of consecutive sentencing. The Iowa Supreme Court reached this conclusion by determining that sentences to be served consecutively qualify as "a direct consequence of a guilty plea," despite that the Court disavowed any reliance on the direct/collateral consequence rubric. *State v White*, 587 NW2d 240, 243 (Iowa, 1998) ("We are not here concerned with the much adjudicated distinction between direct and collateral consequences.") The Court further reasoned that without knowledge of the possibility of consecutive sentencing a defendant is "uninformed and unenlightened," as he does not know "the true maximum punishment" that may result from a consecutive sentence. *Id*. at 246.

The Pennsylvania Supreme Court has likewise concluded that before accepting a guilty plea, a court must inform the defendant that consecutive sentences might be imposed. *Commonwealth v Persinger*, 532 Pa 317; 615 A2d 1305 (1992). An unadvised defendant does not know "the *maximum* punishment that might be imposed for his conduct," which means "the total aggregate sentence." *Id*. at 323 (emphasis in original). Both the Iowa and the Pennsylvania Supreme Courts pointed out that the American Bar Association Standards for Criminal Justice recommend that a defendant be informed of "the maximum possible sentence on the charge, including that possible from consecutive sentences. . . ." 3 ABA Standards for Criminal Justice (2d ed), Standard 14-1.4.[4]

The "direct/collateral" consequence formulation embraced by the majority requires a court to inform a defendant only of definite, immediate, or automatic consequences of a plea. This formulation leaves out indefinite, long-term, and discretionary consequences that may be equally important. To make sense of a plea bargain, a defendant should be informed of sentencing choices available to a court that likely would factor prominently in a defendant's guilty plea decision process. See Roberts, *The Mythical Divide Between Collateral and Direct Consequences of Criminal Convictions: Involuntary Commitment of "Sexually Violent Predators"*, 93 Minn L Rev 670 (2008). Because the maximum length of possible imprisonment is a fact that would reasonably enter into such a calculation, I would hold that due process principles require that a court share this information with a defendant before accepting his or her

---

[3] *Blanton*, 317 Mich App at 337, posits that "[g]iven the nature of the plea-bargaining process in Michigan," a "contractual approach" to sorting out guilty-plea controversies is appropriate. Consideration is an essential element of a contract. Just as I would not knowingly and voluntarily sign a contract obligating me to pay $500 per mowing session, a defendant facing prison should not be forced to guess whether he is at risk of spending 10 years there instead of five.

[4] The Colorado Supreme Court adopted the ABA Standards in *People v Randolph*, 175 Colo 454; 488 P2d 203 (1971). In *People v Peters*, 738 P2d 395, 396 (Colo Ct App, 1987), the Colorado Court of Appeals specifically acknowledged that "[i]ncluded in those standards . . . is the requirement that the court inform a defendant: 'of the maximum possible sentence on the charge, *including that possible from consecutive sentences*.'" (Emphasis in original.)

plea. Based on both the language of MCR 6.302(B) and a defendant's due process right to be informed about an important aspect of the law governing his sentencing, I would vacate Warren's conviction and remand to permit him to withdraw his plea.


/s/ Elizabeth L. Gleicher