*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

THOMAS EMERSON MEEKER,

Defendant-Appellee.

FOR PUBLICATION
February 17, 2022
9:15 a.m.

No. 355046
Jackson Circuit Court
LC No. 19-001610-FH

ON REMAND

Before: JANSEN, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

JANSEN, P.J.

The prosecution originally appealed by leave granted[1] the trial court order granting defendant's motion to dismiss the charge of possession of methamphetamine, MCL 333.7403(2)(b)(*i*), and allowing defendant to withdraw his guilty plea. In a published opinion, this Court affirmed the trial court order, having concluded that the record evidence established that defendant was "incapacitated" for purposes of the Good Samaritan law, MCL 333.7403(3)(a), and therefore, the trial court did not abuse its discretion by permitting defendant to withdraw his plea and dismissing the possession of methamphetamine charge. *People v Meeker (Meeker I)*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 355046); slip op at 5, vacated and remanded 966 NW2d 349 (2021). The prosecution applied for leave to appeal in the Michigan Supreme Court, and in lieu of granting leave to appeal, the Supreme Court vacated our previous opinion, and remanded to this Court for reconsideration. *People v Meeker (Meeker II)*, ___ Mich ___, ___; 966 NW2d 349 (2021). The Supreme Court order states:

> The Court of Appeals opinion failed to address the arguments raised by the prosecutor on appeal. On remand, the Court of Appeals shall address and resolve, in addition to any other issues necessary to the resolution of this case: (1) whether

---

[1] *People v Meeker*, unpublished order of the Court of Appeals, entered November 13, 2020 (Docket No. 355046).

the trial court improperly applied a good faith standard when determining that the defendant was entitled to immunity under MCL 333.7403(3)(a); and (2) if so, whether a remand to the trial court is necessary to apply the correct standard and to determine whether the defendant was "incapacitated" under MCL 333.7403(3)(a) in the first instance. [*Id*. at ___.]

On remand from our Supreme Court, we again affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from an incident on May 27, 2019, during which defendant was experiencing medical issues as a result of using methamphetamine. Defendant's mother called 911, and law enforcement and first responders arrived. Defendant bit the arm of one first responder while he received treatment. At the time, defendant was in possession of 0.38 grams of methamphetamine for personal use. Defendant was charged with possession of methamphetamine and assaulting, resisting, or obstructing a police officer, MCL 750.81d(1), and pleaded guilty to both offenses. However, before sentencing took place, defendant moved to dismiss the possession count of the felony information under the Good Samaritan law, MCL 333.7403(3)(a). The trial court heard oral argument, watched a body camera video from the first responders on the day of the incident, and granted defendant's motion, dismissing the possession count. As noted above, this Court affirmed the trial court order, *Meeker I*, ___ Mich App at ___; slip op at 5, the prosecution applied for leave to appeal in the Supreme Court, and the Supreme Court remanded to this Court for reconsideration, *Meeker II*, ___ Mich at ___.

## II. STANDARDS OF REVIEW

Questions of statutory interpretation are reviewed de novo on appeal. *People v Rodriguez*, 327 Mich App 573, 576; 935 NW2d 51 (2019). "We review for an abuse of discretion a trial court's ruling on a motion to withdraw a plea." *People v Blanton*, 317 Mich App 107, 117; 894 NW2d 613 (2016). An abuse of discretion occurs when the trial court's outcome falls outside the range of reasonable and principled outcomes. *Id.* A trial court's decision on a motion to dismiss charges is also reviewed for an abuse of discretion. *People v Nicholson*, 297 Mich App 191, 196; 822 NW2d 284 (2012). The trial court's findings of fact are reviewed for clear error. *People v Rydzewski*, 331 Mich App 126, 137; 951 NW2d 356 (2020). A finding of fact is clearly erroneous if, after a review of the record, this Court is left with a definite and firm conviction that a mistake was made. *People v Anthony*, 327 Mich App 24, 31; 932 NW2d 202 (2019). Issues that are unpreserved are reviewed for plain error affecting substantial rights. *People v Speed*, 331 Mich App 328, 331; 952 NW2d 550 (2020).

## III. ANALYSIS

Under MCL 333.7403(1), a person shall not knowingly or intentionally possess a controlled substance or controlled substance analogue. However, under certain circumstances, if a person overdoses on a controlled substance, he or she may not be in violation of the statute under the Good Samaritan law, MCL 333.7403(3). *People v Morrison*, 328 Mich App 647, 650; 939 NW2d 728 (2019). The Good Samaritan law provides:

(3) The following individuals are not in violation of this section:

-2-

(a) An individual who seeks medical assistance for himself or herself or who requires medical assistance and is presented for assistance by another individual if he or she is incapacitated because of a drug overdose or other perceived medical emergency arising from the use of a controlled substance or a controlled substance analogue that he or she possesses or possessed in an amount sufficient only for personal use and the evidence of his or her violation of this section is obtained as a result of the individual's seeking or being presented for medical assistance.

(b) An individual who in good faith attempts to procure medical assistance for another individual or who accompanies another individual who requires medical assistance for a drug overdose or other perceived medical emergency arising from the use of a controlled substance or a controlled substance analogue that he or she possesses or possessed in an amount sufficient only for personal use and the evidence of his or her violation of this section is obtained as a result of the individual's attempting to procure medical assistance for another individual or as a result of the individual's accompanying another individual who requires medical assistance to a health facility or agency. [MCL 333.7403(3).]

As provided in *Morrison*, 328 Mich App at 651:

When interpreting a statute, a court's goal is to give effect to the Legislature's intent by first looking to the plain language of the statute. If the statutory language is unambiguous, the court must apply the language as written, and further analysis is neither required nor permitted. A court must presume that each word has some meaning and should avoid constructions that render a part of the statute surplusage or nugatory. A court may not look to the statute's purpose or its public-policy objectives unless the statutory language is ambiguous or unclear. When a court looks to public policy without first analyzing the plain language, the court runs counter to the rule of statutory construction directing us to discern legislative intent from plain statutory language. [Quotation marks and citations omitted.]

Under the unambiguous language of the statute, it is clear that subsection (3)(a) applies to the individual who overdosed on a controlled substance, and subsection (3)(b) applies to a separate individual who seeks medical attention for the individual who overdosed. MCL 333.7403(3). Subsection (3)(a) applies to defendant; however, on reconsideration from the Supreme Court we are directed to consider whether the trial court improperly applied a good faith standard as provided under subsection (3)(b) when it determined that defendant was entitled to immunity under subsection (3)(a). *Meeker II*, ___ Mich at ___.

At the September 1, 2020 hearing on defendant's motion to withdraw and dismiss his guilty plea for possession of a controlled substance, the parties debated whether defendant was "incapacitated" for purposes of MCL 333.7403(3)(a)—the prosecution arguing he was not incapacitated; defendant arguing that he was. The trial court asked the prosecution:

But, from whose point of view do you look at it? Do you look at it from the individual, do they perceive themself [sic] as incapacitated or the person who[] is making the phone call based on their observations? And, looking around the room I think we've all been to a party or two where you know somebody has had way too much to drink, they can't function and yet they think they're just fine and yet you're taking their keys and you would not let him go.

\* \* \*

Because if your perception [is] they are on the verge—they're not functioning properly, they're not thinking properly, they're—they've got impairment in their cognitive functioning deciding that they are fine to go ahead and drive. So, when I'm looking at this I'm thinking from [defendant's mother's] perspective when she makes the call.

The trial court asked, "am I deciding it from objective evidence after [first responders are] called and they're there to evaluate him or am I basing it on the individual who is calling," noting that defendant's mother had seen defendant under the influence many times, but found this incident to be unusual enough to call for help.

In providing its decision from the bench, the trial court then stated:

In making a decision on this matter I'm looking at Black's Law Dictionary, which gives the definition of incapacity, "Any person who is in [sic] impaired by reason or mental illness, mental deficiency, physical illness, or disability, advanced age, chronic use of drugs, chronic intoxication, to the extent he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person who is deemed incapacitated." Now, as pointed out by [the] prosecution[,] the statute in [the prosecutors'] opinion is that the person has to actually be incapacitated. The problem is that that requires the person making a call to have accurately analyzed what they are observing that they are believing isn't causing the person['s] life to be in danger, because of some type of incapacity. Here we had the mother calling who by her statements just in the video has seen him high multiple times and when the officers first get there he's somewhat in a not a comatose state but a not very responsive [state] just starring [sic] off in space. She indicates he's been sitting like that all day. In her mind even having seen him or I shouldn't say in her mind, based on what she articulated that she has seen him because she was telling [defendant] you got some bad stuff, you're going to kill yourself if you keep using like you've been using. There were some other comments that she made. I think from her perspective when she makes that call she does so in good faith thinking that he needs help right away and this [is] a mother who has seen her son stoned many times and even tells him you're going to end up dead if you don't quit using the s***. Therefore, I'm going to allow you to withdraw his plea.

The trial court was clearly uncertain as to how it should determine whether defendant was "incapacitated." The court told the prosecution that it would "love" for the issue to be taken up on

-4-

appeal, and wanted "more definition on that incapacity portion." Thus, it does appear that the trial court misapplied the statute when it considered whether defendant's mother called for emergency services "in good faith" in determining whether defendant was "incapacitated" for purposes of subsection (3)(a) of the Good Samaritan law. "[W]hen the Legislature includes language in one part of a statute that it omits in another, it is assumed that the omission was intentional." *People v Lewis*, 503 Mich 162, 165-166; 926 NW2d 796 (2018). Under the clear language of the statute in subsection (3)(a), the test for immunity is whether the individual was "incapacitated because of a drug overdose," MCL 333.7403(3)(a). Although the term "incapacitated" is not defined in the statute, nor by any caselaw, the clear and unambiguous language does not include the "good faith" perspective of the person seeking help as a determining factor.

This leads us to the second issue the Supreme Court asks us to reconsider—whether a remand is necessary for the trial court to apply the correct standard and determine whether defendant was "incapacitated" under MCL 333.7403(3)(a) in the first instance. *Meeker II*, ___ Mich at ___.

The prosecution argues that because the trial court never decided the issue of incapacitation, it was not properly before this Court. We disagree. An issue is preserved for appeal if it is addressed to the trial court, irrespective of whether the issue is addressed by the trial court. See *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994); *Klooster v Charlevoix*, 488 Mich 289, 310; 795 NW2d 578 (2011). In any event, even if the issue had not been preserved, that does not preclude the Court from considering it on appeal. *People v Zitka*, 325 Mich App 38, 48; 922 NW2d 696 (2018).

In this case, the parties fully briefed the issue below and, as noted, the prosecution argued on appeal that defendant was not incapacitated. As evidenced by this argument, this is not a case in which the record before the trial court was insufficient for it to make a determination regarding incapacitation. See *Morrison*, 328 Mich App at 654-655 (remanding to the trial court where it incorrectly applied the statute and there was insufficient record evidence to determine whether the defendant possessed an amount of drugs "sufficient only for personal use" under MCL 333.7403(3)(a)). There was sufficient evidence in the record to decide the question, and this Court was not precluded from doing so. Thus, it is not necessary to remand to the trial court for it to determine in the first instance whether defendant was incapacitated.

Additionally, "[t]his Court will affirm a lower court's ruling when the court reaches the right result, albeit for the wrong reason." *People v Lyon*, 227 Mich App 599, 612-613; 577 NW2d 124 (1998). Although the trial court did not specifically state that it found defendant to be incapacitated, it stated that "the charge is dismissed based on the Good Samaritan statute." Only subsection (3)(a) of the Good Samaritan law applies to defendant. However, as noted above, there is no caselaw, published or unpublished, construing the term "incapacitated" for purposes of the Good Samaritan law. As such, the Court may consult dictionary definitions. *People v Wood*, 506 Mich 114, 122; 954 NW2d 494 (2020). "Incapacitated person" is defined by *Black's Law Dictionary* (11th ed) as "[s]omeone who is impaired by an intoxicant, by mental illness or deficiency, or by physical illness or disability to the extent that personal decision-making is impossible." "Incapacity" is defined as a "[l]ack of physical or mental capabilities," *Black's Law Dictionary* (11th ed), and "the quality or state of being incapable," a "lack of physical or

intellectual power or of natural or legal qualifications," *Merriam-Webster's Collegiate Dictionary* (11th ed).

The trial court also relied on *Black's Law Dictionary* for the definition of "incapacity," and noted that in the body camera video, defendant was not in a "comatose state but a not very responsive [state] just starring [sic] off in space." The record evidence firmly establishes that defendant was impaired by an intoxicant and rendered unfit for normal functioning. The body camera video footage shows that he was conscious and minimally responsive, providing the first responders with his middle name and birth date, and confirming that 10 dimes made one dollar. He could follow simple commands, and presented his finger for the first responders to take his pulse and blood-oxygen level and his arm for his blood pressure. Defendant was not completely incapacitated in that he was not unconscious; however, the plain language of the statute does not require the individual to be unconscious.

Rather, defendant was incapacitated within the plain meaning of the term and for purposes of subsection (3)(a). His body language was consistent with someone under the influence of a controlled substance. He was unfocused and stared into space, with wide eyes, his gaze often wandering. He acted as though he saw things unseen by the other people on the porch. He talked to himself, and repeatedly said, "I found it," for no reason. Defendant called 911 while two police officers were standing over him. His mother reported that he had been sitting and staring all day. Defendant and his mother indicated that defendant used "bad meth" or other substances, and everyone except defendant thought that he needed to go to the hospital. When defendant's mother produced drugs to the first responders, defendant panicked and lunged for the drugs. He then got into a physical altercation with the first responders, biting one, until he was restrained and handcuffed. After he is put in a patrol car, he is heard on the video ranting and yelling to himself.

Thus, a remand is not necessary, defendant was "incapacitated" for purposes of the Good Samaritan statute, and the trial court properly permitted defendant to withdraw his plea and dismissed the possession of methamphetamine charge.

Affirmed.

/s/ Kathleen Jansen
/s/ Amy Ronayne Krause
/s/ Michael F. Gadola