*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 17, 2024
11:20 AM

Plaintiff-Appellant,

v

No. 369495
Muskegon Circuit Court
LC No. 2022-002396-FC

DARESE DUKUR SANDERS,

Defendant-Appellee.

Before: GARRETT, P.J., and RICK and MARIANI, JJ.

PER CURIAM.

Defendant pleaded guilty to carrying or possessing a firearm when committing or attempting to commit a felony (felony-firearm), MCL 750.227b, and assault with intent to murder (AWIM), MCL 750.83. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve consecutive terms of 2 years' imprisonment for felony-firearm and 38 to 65 years' imprisonment for AWIM. After sentencing, defendant moved to withdraw his plea, and the trial court granted the motion. The prosecution now appeals by leave granted.[1] We affirm.

This case arises from a fatal shooting. Defendant was initially charged with open murder and felony-firearm in connection with the shooting, and he proceeded to trial on those charges. After a break during the third day of his trial, the prosecution stated that it would be requesting the addition of an AWIM charge and that, if defendant were willing to accept a plea to that lesser offense, it would dismiss the pending murder charge. The prosecution added that there had been some plea discussions to that effect but they had not resulted in a plea due to defendant's concerns about the addition of the AWIM charge. Defense counsel confirmed that defendant objected to the addition of that charge and wanted to "just proceed with the open murder as charged."

---

[1] *People v Sanders*, unpublished order of the Court of Appeals, entered March 1, 2024 (Docket No. 369495).

The trial court then stated that the prosecution's request to add the AWIM charge would be granted and that the court "want[ed] to address" the plea offer:

Now also I want to address what [the prosecutor] said about the—he was still offering the assault with intent to murder as a possible plea offer to the Defendant. That carries a lesser charge—a lesser time than the murder second-degree or second-degree murder.

If the Defendant is found guilty of first-degree murder, which is a high possibility in this case, or second-degree murder, or accessory to that, which would also be basically a first-degree murder, that is life without parole. I can't do anything with that. That is just life. There is no other number of years. It's done.

If the second-degree, the guidelines on that is over 20 years, and that's just starting at the bottom of second-degree.

The assault with intent to murder, the guidelines that the prosecutor has offered to the Defendant, those guidelines start at just a little over 11 years. So I could go 11 years on that, and that would be the sentence in that case.

So you're looking at life without parole, over 20 years, or possibly 11 years.

The trial court then placed defendant under oath and engaged in the following exchange with him:

*The Court*: You've seen how this trial has been going so far.

*Defendant*: Yes, ma'am.

*The Court*: You're the only one that—that does the time. You're the only one that can decide what you want to do. You understand that if this jury comes back with a verdict of guilty of first-degree murder, I can't do anything but life without parole. You understand that?

*Defendant*: Yes, ma'am.

*The Court*: And you understand if they come back with second, that you're looking at over 20 years and possibly 30 years. Do you understand that?

*Defendant*: Yes, ma'am.

*The Court*: And so I'm also allowing that lesser-included to be added to the jury instructions. So they could come back with that also. Do you understand?

*Defendant*: Yes, ma'am.

*The Court*: The prosecutor is offering that if you take advantage of the plea agreement, which is assault with intent to murder, that those guidelines could

-2-

possibly be 13 years at the Michigan Department of Corrections. That is a significant amount less than what you're possibly looking at if you were convicted at second-degree and completely different from life without parole. Do you understand that?

*Defendant*: Yes, ma'am.

The trial court then asked defendant if he had had "an opportunity to talk to [his] attorney about all [his] options in this case," to which defendant responded that "murder and second-degree murder, being an accessory to a crime" were what he and his attorney "have been preparing for" and he "didn't know [he] would be facing [an AWIM] charge right now." The court stated that it would give defendant an opportunity at that time to speak with his attorney because he now knew "what's going on" and "this is a lot of different years on here." The prosecution then chimed in:

[*Prosecutor*]: And, Judge, just to be clear, it's my understanding the Court is not engaging in any type of sentencing agreement at this point.

*The Court*: No.

[*Prosecutor*]: You're just informing what the guidelines range could potentially be, and that the guidelines could—would—well, they are lower. We know they are lower with the assault with intent to commit murder, but they could be as low as what the Court has indicated. But the Court is not saying—And I'm doing this mostly for—for the—

*The Court*: I'm not saying they're giving you 13 years.

*Defendant*: I know that's what you're saying.

[*Prosecutor*]: Yeah.

*The Court*: I was saying that the bottom of that is 13 years. So it could go 13 to—

*Defendant*: I know exactly—I know exactly what you're saying.

*The Court*: All right.

[*Prosecutor*]: I just want to make sure everybody is on the same page.

*The Court*: Okay. Let's take a moment, go off the record.

After an approximately 40-minute recess, the trial court reconvened, confirmed with defendant that he had had an opportunity to speak with his attorney, and asked, "[A]re we going forward with the trial, or are you going to take advantage of the plea?" Defendant responded that he wanted to "[t]ake advantage of the plea." The court then confirmed with defendant and the prosecution the terms of the plea: that defendant would be pleading guilty to AWIM and felony-

firearm as a fourth habitual offender, that the pending murder charge would be dismissed, that the maximum penalty for AWIM was life, that there was a mandatory two-year sentence for felony-firearm prior to the AWIM sentence, and that the guidelines for AWIM had not yet been calculated, with the prosecution also noting that "there may be some discussion about the exact guidelines range" and defense counsel "has used a calculation that would indicate I believe 135-to-450[.]"

The court then secured defendant's affirmations that: he understood the agreement; no one promised him anything other than what he pleaded to; no one threatened him to plead; he was pleading of his own free choice; and he understood that, if the plea was accepted, he would "be giving up the claim that it was a result of any promises or threats [he] did not tell [the court] about" and also giving up the claim "that it was not [his] choice to make the plea." Defendant also affirmed that he understood the maximum penalties for each conviction and that "[t]here's no agreement on the actual time in this case, but it's an automatic two year that [he had] to serve [for felony-firearm] prior to . . . whatever" he received for AWIM. Defendant then pleaded guilty to one count of felony-firearm and one count of AWIM. After defendant gave the factual basis for his plea, the trial court asked both parties, "Have I complied?" Each party responded affirmatively. The court then asked both parties, "Any promises or threats not disclosed?" Each party responded, "None, Your Honor."

Defendant was thereafter sentenced as previously described, based on a guidelines range for his AWIM sentence that was ultimately calculated to be 225 to 750 months. After sentencing, defendant moved to withdraw his plea, arguing that the trial court violated *Killebrew*[2] and *Cobbs*[3] when it, without invitation from either party, initiated a discussion with defendant about the possibility of a plea and provided him with unsolicited and inaccurate advice in that regard, which created an impermissibly coercive environment and resulted in an involuntary plea. The prosecution responded in opposition and, after holding a hearing, the trial court granted defendant's motion to withdraw, agreeing that it had violated *Cobbs* because it had "advised defendant of possible terms of sentence on [its] own initiative during a plea proceeding." The prosecution then sought leave to appeal, which this Court granted.

We review for an abuse of discretion a trial court's ruling on a motion to withdraw a guilty plea, and we review de novo related constitutional issues and the interpretation and application of the court rules. *People v Cole*, 491 Mich 325, 329-330; 817 NW2d 497 (2012). Defendant's post-sentencing motion to withdraw his plea is governed by MCR 6.310(C), which provides, in relevant part:

> If the trial court determines that there was an error in the plea proceeding that would entitle the defendant to have the plea set aside, the court may give the advice or make the inquiries necessary to rectify the error and then give the defendant the opportunity to elect to allow the plea and sentence to stand or to withdraw the plea. If the defendant elects to allow the plea and sentence to stand,

---

[2] *People v Killebrew*, 416 Mich 189; 330 NW2d 834 (1982).

[3] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

-4-

the additional advice given and inquiries made become part of the plea proceeding for the purposes of further proceedings, including appeals. [MCR 6.310(C)(3).]

"In other words, under MCR 6.310(C), a defendant seeking to withdraw his or her plea after sentencing must demonstrate a defect in the plea-taking process." *People v Blanton*, 317 Mich App 107, 118; 894 NW2d 613 (2016) (quotation marks, citation, and alteration omitted).

According to the prosecution, the trial court abused its discretion when it granted defendant's motion to withdraw his plea because defendant waived any claim that there was a defect in the plea proceeding and, regardless, there was no such defect. We disagree.

A trial court may have limited participation in the plea bargaining process, but it must minimize its "involvement in the procedure . . . to avoid a coercive effect on the defendant and loss of public confidence in the judicial system[.]" *People v Killebrew*, 416 Mich 189, 202; 330 NW2d 834 (1982). In *Killebrew*, our Supreme Court recognized that "[t]he trial judge's role in the plea-bargaining procedure shall remain that of a detached and neutral judicial official." *Id*. at 205. Accordingly, "a trial judge shall not initiate or participate in discussions aimed at reaching a plea agreement," and "may not engage in the negotiation of the bargain itself." *Id*. "[T]he coercive atmosphere fostered by this type of judicial participation in the plea-bargaining process renders the defendant's subsequent guilty plea involuntary." *Id*. at 213.

*Killebrew* approved a procedure under which a court could consider a "plea agreement offered to the court by the prosecutor and defendant [that] includes a non-binding prosecutorial recommendation of a specific sentence[.]" *Id*. at 209. "In cases involving sentencing recommendations under *Killebrew*, the neutrality of the judge is maintained because the recommendation is entirely the product of an agreement between the prosecutor and the defendant." *People v Williams*, 464 Mich 174, 179; 626 NW2d 899 (2001). In *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993), our Supreme Court "modified *Killebrew* to allow somewhat greater participation by the judge." *Williams*, 464 Mich at 177. Under *Cobbs*, 443 Mich at 283, "[a]t the request of a party, and not on the judge's own initiative, a judge may state *on the record* the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense." But "[t]o avoid the potential for coercion, a judge must not state or imply alternative sentencing possibilities on the basis of future procedural choices, such as an exercise of the defendant's right to trial by jury or by the court." *Id*.

As the trial court duly recognized, it ran afoul of these principles and created an impermissibly coercive atmosphere when it *sua sponte* initiated a discussion with defendant about the possibility of a plea and advised him of its view of his options and their consequences. Without either party requesting the court's input or involvement, the court first opined that there was "a high possibility" that defendant would be convicted of first-degree murder and thus sentenced to life without parole, confirming shortly afterward with defendant, after placing him under oath, that he had "seen how this trial has been going so far" and that he understood "that if this jury comes back with a verdict of guilty of first-degree murder, [the court] can't do anything but life without parole." The court also speculated that, if defendant were convicted of second-degree murder, he would be "looking at over 20 years and possibly 30 years," but for AWIM, "the guidelines that the prosecutor has offered to [him] . . . start at just a little over 11 years" and "[s]o [the court] could go 11 years on that, and that would be the sentence in that case." The court then revised that

number upward slightly when confirming with defendant, while he was under oath, that he understood that "[t]he prosecutor is offering that if [he took] advantage of the plea agreement [to AWIM], . . . those guidelines could possibly be 13 years," which was "a significant amount less than what [he was] possibly looking at if [he was] convicted at second-degree and completely different from life without parole."

As defendant learned at sentencing, his guidelines range for AWIM would prove to be quite a bit higher than what this discussion reflected, with its bottom end just shy of 19 years. And the 38-year minimum sentence defendant ultimately received for AWIM well exceeded what the court had projected he would face if convicted of second-degree murder. The prosecution stresses that the court confirmed that it was "not engaging in any type of sentencing agreement at [that] point" and was "just informing what the guidelines range could potentially be." But the fact remains that the court was, wholly on its own initiative, advising defendant about the different sentences he could face if he did or did not "take advantage of the plea"—and doing so, no less, with a tilt that was (factually mistaken or otherwise[4]) unmistakably in favor of that option. This contravened *Cobbs*, 443 Mich at 283, and *Killebrew*, 416 Mich at 205, 213, and we fail to see any abuse of discretion in the trial court's recognition of that error and corresponding award of relief to defendant.

Nor do we see any merit in the prosecution's waiver argument. As the prosecution does not dispute, defendant raised this claim of error and sought withdrawal of his plea on its basis in a manner fully consistent with MCR 6.310(C). The prosecution stresses that defendant affirmed to the trial court when entering his plea that there had been no undisclosed promises or threats with respect to the plea and that he understood that, with the plea, he would "be giving up the claim that it was the result of any promises or threats [he] did not tell [the court] about." The prosecution also notes that, when the court finished taking the plea, the parties responded affirmatively when the court asked, "Have I complied?" It is apparent, however, that defendant's claim of error under *Killebrew* and *Cobbs* is not based on any promise or threat that had not been disclosed to the court, or even on any deficiency in the plea colloquy itself, but instead on the court's own on-the-record conduct that preceded the colloquy and impermissibly influenced defendant's decision to enter the plea. The prosecution offers nothing to meaningfully support its position that, because defendant did not raise the impermissibility of the court's conduct under *Cobbs* and *Killebrew* at the time it occurred, he waived any subsequent ability to seek withdrawal of his plea on its basis.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Philip P. Mariani

---

[4] Defendant's entitlement to relief in this case does not depend on whether or to what extent the court's advice to him was inaccurate. Nor do we need to reach whether any such inaccuracy was enough to provide its own independently sufficient grounds for relief.