# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVID MATTHEW PONTELLO,

Defendant-Appellant.

UNPUBLISHED
December 11, 2018

No. 338820
Tuscola Circuit Court
LC No. 15-013520-FH

Before: GLEICHER, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

David Pontello pleaded guilty to two counts of felon in possession of a firearm, MCL 750.224f, two counts of possession of a firearm during the commission of a felony (felon-in-possession), MCL 750.227b, and one count of carrying a concealed weapon without a permit, MCL 750.227. Defendant subsequently sought to withdraw his plea, claiming he was denied the right to counsel at the plea proceeding. Defendant also asserted that he received bad advice and should have gone to trial where he would have defended with a New York State restoration of rights form. The trial court denied defendant's motions for post-judgment relief.

The trial court required defendant to represent himself on the eve of trial without following the procedures established by court rule and caselaw to protect indigent criminal defendants' constitutional rights. However, the trial court correctly determined that defendant could be tried and had no valid defense for the felon-in-possession (and therefore felony-firearm) charges based on his prior New York felony conviction and failure to have his right to possess firearms restored in Michigan. Rather than vacating or reversing the trial court's denial of defendant's motion to withdraw his guilty plea, we remand to allow defendant to consider, with the assistance of counsel, whether he still desires that remedy.

## I. BACKGROUND

On September 19, 2015, defendant was arrested in Michigan on suspicion of breaking and entering a nearby home. Police found a loaded pistol on defendant's person and a loaded (but disassembled) shotgun, body armor, and ammunition in his backpack. On the way to the police station, defendant threatened to kill or harm law enforcement officials, including by blowing up the Tuscola County Jail upon his release.

-1-

No evidence connected defendant to the breaking and entering and he was never charged in that regard. The prosecution did charge defendant with making a false report or threat of terrorism, carrying a concealed weapon without a permit, and two counts each of felon in possession of a firearm,[1] felon in possession of ammunition, and felony-firearm. The felon-in-possession charges were based on defendant's 1995 New York conviction of first-degree reckless endangerment in violation of NY Penal Law § 120.25 ("A person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person."). For this offense, defendant was sentenced in New York to five years' probation.

Defendant's first appointed attorney, Gregory Bringard, requested a competency examination for his client. Bringard described that defendant sent him a letter accusing a jail guard of entering his cell and injecting him "with an unknown substance." Surveillance footage contradicted defendant's claim. Defendant also accused the guard of poisoning or drugging his food. During a meeting with his client, defendant indicated that "hidden cameras in his cell" were "broadcasting his life on the internet in New York" and that "the mafia" was behind it.

---

[1] MCL 750.224f proscribes felon-in-possession, in relevant part, as:

> (2) A person convicted of a specified felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state until all of the following circumstances exist:
>
> (a) The expiration of 5 years after all of the following circumstances exist:
>
> > (*i*) The person has paid all fines imposed for the violation.
> >
> > (*ii*) The person has served all terms of imprisonment imposed for the violation.
> >
> > (*iii*) The person has successfully completed all conditions of probation or parole imposed for the violation.
>
> (b) The person's right to possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm has been restored under [MCL] 28.424.
>
> * * *
>
> (10) As used in subsections (2) and (4), "specified felony" means a felony in which 1 or more of the following circumstances exist:
>
> (a) An element of that felony is the use, attempted use, or threatened use of physical force against the person or property of another, or that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Defendant had an "outburst" at the hearing on that motion, stating that Bringard "can't represent a dog" and "I'll represent myself first." Accordingly, the court ordered the court officer to remove defendant from the courtroom. Bringard thereafter filed a motion to withdraw as defendant's counsel.

Replacement counsel, Duane Burgess, appeared at defendant's competency hearing, but defendant refused to sit at the defense table with him, declaring, "I'm not gonna be railroaded by that man or your court-appointed lawyers in your court. He's not filed one motion in my defense in nine months, and I will not have him as my attorney." The court considered a letter from the Center for Forensic Psychiatry, stating that defendant "declined participation regarding the evaluation relative to his criminal responsibility." The psychologist conveyed that defendant understood the purpose of the evaluation and the potential impact of its results, and that "his choice to forego an evaluation . . . was based on rational reasoning." The court then found defendant competent to stand trial.

Two days later, Burgess filed a motion to withdraw as defense counsel. Burgess described that defendant repeatedly contacted him from prison despite that Burgess had explained that he could do nothing until the competency hearing was finalized. On the day of the hearing, defendant told Burgess, "[Y]ou're fired," and "I'll hire a real attorney."

Despite that Burgess requested withdrawal, Burgess filed a motion to dismiss the felon-in-possession and felony-firearm charges, arguing that defendant's right to possess and own firearms had been restored in New York through the issuance of a "certificate of relief from disabilities." The judge who sentenced defendant in New York issued the certificate on the day of sentence. It provided:

> This certificate is issued to the holder to grant relief from all or certain enumerated disabilities, forfeitures, or bars to his employment automatically imposed by law by reason of his conviction of the crime or the offense specified herein.

> This certificate shall NOT be deemed nor construed to be a pardon.

The certificate identified defendant and his conviction for "reckless endangerment 1st degree, Penal Law Section 120.25." The certificate continued with the following options, with the first selected:

> 11. CHECK ONE BOX ONLY

> This certificate shall:

> a. X    Relieve the holder of all forfeitures, and of all disabilities and bars to employment, excluding the right to retain or to be eligible for public office, by virtue of the fact that this certificate is issued at the time of sentence. . . .

> b.    Relieve the holder of all disabilities and bars to employment, excluding the right to be eligible for public office.

-3-

      c.        Relieve the holder of the forfeitures, disabilities or bars herein enumerated

_____.

The court also rendered the certificate "permanent," meaning that it was not revocable.

A letter from the New York State Division of Criminal Justice Services explained the certificate. The writer clarified that the certificate "does not eliminate or expunge the felony conviction from your client's record." Rather, "[i]t eliminates any statutory disabilities that are associated with a felony conviction such as precluding the filing [of] an application for a pistol permit." Defendant would have to file an application for a pistol permit and the licensing agency was still permitted to consider his felony conviction in deciding whether to grant the motion, although the agency would be required to "take into account that issuance of the Certificate means in the eyes of the court that he was rehabilitated from the offense."

And Burgess attached to the motion to dismiss a secondary source, described only as "a recitation of New York Law," stating that firearm privileges may be restored after a conviction for a felony or a "serious offense" by a pardon or a certificate of relief from disabilities. The attached treatise stated, however, that "[r]estoration must be specified in the document, and Class A-1 and violent felonies are ineligible." Defendant subsequently filed his own motion to dismiss, but based only on the lack of witness testimony against him.

At the June 8, 2016 hearing on Burgess's motion to withdraw, the attorney advised the court that defendant had fired him and did not authorize him to file motions on his behalf. Defendant expressed his belief that Burgess's motion regarding the restoration of his right to own firearms "lack[ed] critical evidence." Moreover, defendant "concur[red] with the motion to withdraw." The court advised defendant:

> *The Court.* Okay. Here's what I want you to understand, Mr. Pontello. If Mr. Burgess is released from his obligations, I will not be appointing another attorney for you. So you will represent yourself, hire an attorney or Mr. Burgess is your attorney. Those are your three options. Do you understand that?

> *Defendant.* Yes, I do. I don't have a problem retaining my own attorney. I might need a continuance until I finish the sale of some property I have and I would be able to retain my own counsel. I mean it's just that his motion lacks . . . so much critical evidence pertaining to my rights. I don't feel that it even came close to - -

> *The Court.* All right. Well, before you answer my question . . . I am not adjourning your trial. Your trial is June 21st.

> *Defendant.* Okay.

> *The Court.* So having that information, do you want Mr. Burgess to remain as your attorney, do you want to hire an attorney or do you wish to represent yourself?

*Defendant.* Well, I mean unless he's gonna argue the motion I prepared pertaining to my rights being restored, . . . I feel that I would have to go with either representing myself or retaining an attorney. I mean if we can get a continuance for the motions . . . and he could look over my motions, you know, . . . maybe we'd be able to work together, you know. If not, I mean I'm gonna have to get a better defense attorney . . . to handle this situation, at least . . . the motions are very important.

*The Court.* Okay. So I'm gonna ask you again, Mr. Pontello, do you want to represent yourself, do you want Mr. Burgess to continue representing you or do you wish to hire an attorney? Your trial is going June 21st.

*The Defendant.* Okay. And . . . as far as the motions I filed, I would want to argue the motions that I had sent in 'cause they're - -

*The Court.* Okay. I - - you're gonna get an opportunity to do that. We need to resolve this matter first.

*Defendant.* Okay. I mean unless we were going to meet and discuss the motions and what his motions lack. I would have to either represent myself or retain an attorney.

The court then allowed Burgess to withdraw as counsel. In doing so, the court noted that Burgess was defendant's second court-appointed attorney with whom defendant could not "get along." Although defendant had the right to counsel, the court stated that defendant did not have the right to appointed counsel of his choosing. The court advised defendant that "as of this minute, you are representing yourself," until and unless defendant hired his own attorney.

Defendant argued on his own behalf that he legally possessed the weapons on his person on the day in question. Specifically, defendant noted that he had a New York State certificate of relief from disabilities that "eliminated any statutory disabilities that were associated with a felony conviction." He continued, "I'm seeking a job in law enforcement and I'm a security professional and all my firearms and the ammunition were a hundred percent legal." After reading portions of the certificate into the record, defendant stated, "I'd also like to remind . . . the courts that a conviction being set aside, an expungement or a pardon can only come from the sentencing judge or . . . the governor of the state in which the crime occurred." The court interrupted, advising defendant that the certificate specifically provided that it did not expunge his record and that his conviction still stands. Even so, defendant continued to argue that his conviction had been expunged or set aside and therefore MCL 750.224f, proscribing felon-in-possession, was inapplicable.

The prosecutor relied upon the documentation attached to Burgess's motion to dismiss, which provided that the certificate of relief from disabilities must specifically provide for the restoration of firearm rights. Defendant's certificate did not so provide. And, the prosecutor continued, defendant's right to possess firearms "certainly" was not restored in Michigan as he had not taken the required steps in Michigan.[2] The prosecutor contended that the definition of first-degree reckless endangerment, including a depraved indifference to human life, "involve[d] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," as provided in Michigan's definition of a "specified felony" under the felon-in-possession statute. As the New York conduct fell within the definition of MCL 750.224f, defendant was required to apply to have his firearm rights restored under MCL 28.424, and he had not done so. Defendant countered that his certificate did relieve him of all forfeitures and disabilities arising from his felony conviction, except the right to run for public office. New York was the only state that could restore his rights as the rights were lost there, and that was already done, he insisted.

The trial court denied defendant's motion to dismiss. The court noted that the New York certificate did not clear the felony conviction from defendant's record. Defendant's reckless endangerment felony was a "specified felony" under Michigan law, the court opined. Accordingly, defendant was required to follow the procedures set forth in MCL 28.424 to have

---

[2] Pursuant to MCL 28.424(1), a felon must petition the circuit court in the county where he resides for restoration of his firearm rights. MCL 28.424(4) provides:

> The circuit court shall, by written order, restore the rights of an individual to possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm or to possess, use, transport, sell, carry, ship, or distribute ammunition if the circuit court determines, by clear and convincing evidence, that all of the following circumstances exist:
>
> (a) The individual properly submitted a petition for restoration of those rights as provided under this section.
>
> (b) The expiration of 5 years after all of the following circumstances:
>
> (*i*) The individual has paid all fines imposed for the violation resulting in the prohibition.
>
> (*ii*) The individual has served all terms of imprisonment imposed for the violation resulting in the prohibition.
>
> (*iii*) The individual has successfully completed all conditions of probation or parole imposed for the violation resulting in the prohibition.
>
> (c) The individual's record and reputation are such that the individual is not likely to act in a manner dangerous to the safety of other individuals.

his firearm rights restored. Defendant had not done that. Even if defendant's rights were restored in New York, the court continued, Michigan was a separate jurisdiction with its own rules that had to be followed.

The day before trial was scheduled to begin, defendant, representing himself, moved to preclude documentary evidence that he pleaded guilty in New York to a class D, nonviolent felony. Defendant contended that the evidence was inadmissible under MRE 609(c) and (d) because the certificate of relief from disability equated to a "pardon, annulment, or certificate of rehabilitation." He also contended that his prior conviction did not count under the felon-in-possession statute because he had been pardoned. The court advised defendant that MRE 609 related to impeachment with a prior felony and that the prior felony was substantive evidence in this case. Moreover, the court reminded defendant, the court had already determined that the reckless endangerment conviction amounted to a specified felony under Michigan law and that the certificate of relief did not amount to a pardon. Defendant tried to convince the court to the contrary, but the court did not budge. At the close of the hearing, the prosecutor moved to preclude the New York certificate of relief from disability from evidence at trial. As the court found that defendant had committed a specified felony and that the certificate neither expunged that conviction nor restored defendant's right to possess firearms, the document would be irrelevant and confusing to the jury. The court ultimately warned defendant that he would be required to present evidence that he took steps in Michigan to have his rights restored in order to avoid the charges against him.

On the day set for trial, defendant again appeared without counsel. The court clarified that defendant could present evidence that he attempted to restore his right to possess firearms in Michigan, but could not present similar evidence regarding activity in New York. Defendant lamented that this gutted his entire defense. After being advised of his potential sentencing consequences, defendant decided to plead guilty to the counts of felon-in-possession, felony-firearm, and carrying a concealed weapon. The prosecutor dismissed the threat of terrorism charge because the witness to defendant's statements was not available for trial and also dismissed the charge of felon in possession of ammunition.

On August 2, 2016, defendant filed an in pro per motion to withdraw his guilty plea. He continued to contend that he had been pardoned in New York and added that the age of his conviction rendered that evidence inadmissible. Before considering that motion and imposing sentence, the court appointed new counsel for defendant—Gary Crews. At that hearing, Crews indicated that defendant wished to withdraw his motion to withdraw his plea:

> Mr. Pontello has decided because of the Court's rulings that if there were a trial, he couldn't get before the jury the evidence that he wanted to get before the jury, and therefore . . . the expectation is overwhelming that he would lose that jury trial case and the punishment could then . . . be more severe. Likewise, . . . there's a possibility the prosecution could bring forward other charges. Because of that, Mr. Pontello's withdrawing . . . his motion to withdraw his plea.

After a short recess, defendant changed his mind and resupported his motion to withdraw his plea. Crews stated on the record that he advised defendant that this was not in his best interests. Crews warned defendant that the court had already ruled on the admissibility of the certificate of

relief from disabilities and determined as a matter of law that he had not been pardoned in New York and that those issues could not be raised at trial. Defendant again vacillated and indicated that he wished to "withdraw [his] motion to set aside [the] plea." Defendant addressed the court, however, expressing his belief that he could legally own firearms and that he intended to appeal the court's rulings. He continued, "I don't believe . . . that I was given the chance to really prove the point having no attorney through my pretrial motions and whatnot. I feel a better attorney would have definitely had more success, prov[ing] that."

At the close of the hearing, the court sentenced defendant to two years' imprisonment for felony-firearm with credit for time served, and to a one-year consecutive probationary term for the other charges.

Defendant did not give up. With the assistance of his newly appointed appellate counsel, David Worden, defendant filed another motion to withdraw his guilty plea. Defendant contended that his plea was involuntary because "defense counsel misled [him] to believe he could appeal the Court's MRE 403 evidence ruling"—regarding the admissibility of evidence of the restoration of his firearms rights in New York—and because he "had a valid defense of entrapment by estoppel, raised before the plea, and the Court should have had an evidentiary hearing." The entrapment by estoppel defense was based on defendant's reliance on the New York certificate of relief from disabilities.

Before the trial court could consider the motion, defendant requested that Worden withdraw as counsel of record and stated his intent "to report defense counsel's alleged misconduct to the Attorney Grievance Commission." The court granted this motion. Defendant then submitted an affidavit to the court, indicating that he had not authorized Worden to file a motion to withdraw his guilty plea; rather, he had authorized Worden only to file a delayed application for leave to appeal. Defendant followed up by filing in pro per a nonconforming delayed application, which was denied without prejudice by this Court. *People v Pontello*, unpublished order of the Court of Appeals, entered May 30, 2017 (Docket No. 337749).

After remedying his appellate filing errors with the assistance of appointed counsel, Christine Pagac, defendant renewed his motion to withdraw his guilty plea. Defendant contended that his plea was not knowing, understanding, and voluntary because he was denied the right to counsel and was forced to represent himself. He continued that he should not have been prosecuted for felon-in-possession and felony-firearm as reckless endangerment was not a specified felony, and that he had a valid defense of entrapment by estoppel, further invalidating his plea.

The prosecutor challenged defendant's motion. First, the prosecutor noted that defendant had already received two court-appointed attorneys before trial and could work with neither. Defendant indicated that he wanted to retain his own counsel, but appeared at the next hearings alone. The court was not required to give defendant unlimited time to find an attorney with whom he could work. Second, as to the entrapment defense, the prosecutor asserted that it would only apply if defendant had committed his current offense in New York. No Michigan governmental official had misled defendant to believe that his right to own and possess firearms had been restored in this state. Finally, the prosecutor countered that reckless endangerment as defined under New York law was a specified felony under Michigan law because a "depraved

indifference to human life" shown through reckless conduct is synonymous with activity that "involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

The trial court denied defendant's motion. The court rejected that defendant was denied his right to counsel as he was advised of his right to retain his own counsel, represent himself, or keep his court-appointed attorney, and made his choice knowingly, voluntarily, and intelligently. The court noted that it had repeatedly considered, and rejected, defendant's claims that his New York conviction had been pardoned or expunged and that the New York certificate of relief was a defense to his Michigan charges.

## II. LEGAL PRINCIPLES

On appeal, defendant contends that the trial court should have permitted him to withdraw his guilty plea because (1) the court erroneously denied his request to raise an entrapment by estoppel defense rendering his plea ineffective, (2) the court and defense counsel advised defendant that he could appeal the trial court's underlying rulings and yet made his plea unconditional, and (3) defendant was denied his right to counsel at the plea hearing.

"We review for an abuse of discretion a trial court's ruling on a motion to withdraw a plea." *People v Blanton*, 317 Mich App 107, 117; 894 NW2d 613 (2016). "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *Id*. (cleaned up).[3] We review de novo underlying issues of statutory interpretation and constitutional violations. *People v Wilder*, 485 Mich 35, 40; 780 NW2d 265 (2010); *People v Kloosterman*, 296 Mich App 636, 639; 823 NW2d 134 (2012).

Once a defendant is sentenced, he must show "a defect in the plea-taking process" to be entitled to withdraw his plea. *Blanton*, 317 Mich App at 118 (cleaned up). Specifically, MCR 6.310(C) provides:

> The defendant may file a motion to withdraw the plea within 6 months after sentence. . . . If the trial court determines that there was an error in the plea proceeding that would entitle the defendant to have the plea set aside, the court must give the advice or make the inquiries necessary to rectify the error and then give the defendant the opportunity to elect to allow the plea and sentence to stand or to withdraw the plea. . . .

"[A] court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate." *People v Cole*, 491 Mich 325, 330-331; 817 NW2d 497 (2012) (cleaned up). "Waivers of constitutional rights," such as the right to trial by entering

---

[3] This opinion uses the new parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, Cleaning Up Quotations, 18 J App Pract & Process 143 (2017).

a plea, "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v United States*, 397 US 742, 748; 90 S Ct 1463; 25 L Ed 2d 747 (1970).

Moreover, a criminal defendant facing incarceration has a constitutional right to counsel at all critical stages of the criminal process. *People v Williams*, 470 Mich 634, 640-641; 683 NW2d 597 (2004). But an indigent criminal defendant is not entitled to appointed counsel of his choosing. *People v Portillo*, 241 Mich App 540, 543; 616 NW2d 707 (2000). Upon a criminal defendant's request to proceed pro se, the trial court must determine whether the request is unequivocal, whether the defendant is knowingly, intelligently, and voluntarily waiving the right to legal counsel, and whether the defendant's self-representation will disrupt, unduly inconvenience, or otherwise burden the court and the administration of justice. *People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976). In addition, the trial court must comply with MCR 6.005(D), which provides:

> The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first
>
> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation.
>
> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

MCR 6.005(E) requires the court to follow up at the start of each subsequent proceeding:

> If a defendant has waived the assistance of a lawyer, the record of each subsequent proceeding (e.g., preliminary examination, arraignment, proceedings leading to possible revocation of youthful trainee status, hearings, trial, or sentencing) need show only that the court advised the defendant of the continuing right to a lawyer's assistance (at public expense if the defendant is indigent) and that the defendant waived that right. Before the court begins such proceedings,
>
> (1) the defendant must reaffirm that a lawyer's assistance is not wanted; or
>
> (2) if the defendant requests a lawyer and is financially unable to retain one, the court must appoint one; or
>
> (3) if the defendant wants to retain a lawyer and has the financial ability to do so, the court must allow the defendant a reasonable opportunity to retain one.

"[I]f the trial court fails to substantially comply with the requirements in *Anderson* and the court rule, then defendant has not effectively waived his Sixth Amendment right to the assistance of counsel." *People v Russell*, 471 Mich 182, 191-192; 684 NW2d 745 (2004). "Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures." *Russell*,

471 Mich at 191 (cleaned up). "Proper compliance with the waiver of counsel procedures is a necessary antecedent to a judicial grant of the right to proceed in propria persona. Proper compliance requires that the court engage, on the record, in a methodical assessment of the wisdom of self-representation by the defendant." *People v Hicks*, 259 Mich App 518, 523; 675 NW2d 599 (2003) (cleaned up).

### III. ASSISTANCE OF COUNSEL

The trial court did not comply with its duties under MCR 6.005 and *Anderson* before forcing defendant to make a quick in-court decision whether to represent himself. Defendant did not request to represent himself. Rather, the court warned defendant at the June 8, 2016 hearing that if he terminated the services of his second court-appointed lawyer, he would have to either retain counsel or represent himself; the court would not appoint substitute counsel. Defendant emphatically and repeatedly indicated that he would not accept Burgess as his attorney. Although defendant stated numerous times that he would prefer to retain counsel of his choosing, he also indicated that he could not afford to do so and therefore felt forced to represent himself.

At the June 8 hearing, the trial court did not advise defendant of the charges against him, the potential sentences he faced, or the risks involved in self-representation, as required by MCR 6.005(D)(1). The court made no consideration of whether defendant's self-representation would disrupt the proceedings, as required by *Anderson*. This was especially troubling in this case as the court had removed defendant from the courtroom in the past for disruptive behavior. The court also violated MCR 6.005(E) at the June 15 hearing by failing to ensure that defendant wanted to continue in pro per. And on June 16, the day scheduled for the start of trial, the court inquired whether defendant wished to represent himself or to proceed with retained counsel, but did not determine whether the indigent defendant had reconsidered his position with regard to appointed counsel.

The prosecutor suggests that the court's failure to methodically test the validity of defendant's waiver of counsel is somehow excused because defendant twice requested substitute counsel without good cause, in the prosecutor's estimation. Indeed, " 'a defendant's failure to retain counsel within a reasonable time' " can amount to a forfeiture of the right to counsel. *People v Kammeraad*, 307 Mich App 98, 132; 858 NW2d 490 (2014), quoting *US v McLeod*, 53 F3d 322, 325 (CA 11, 1995). However, defendant only made two requests in nine months; this was not a case where the defendant engaged in a continuous parade of bad behavior designed to interfere with the court proceedings. Compare *Kammeraad*, 307 Mich App 98. Moreover, the trial court did not reject defendant's second request for substitute counsel until June 8, 2016, a mere eight days before his trial was set to begin. Defendant's inability to secure retained counsel within that time does not strike us as unreasonable.

Compounding these errors, the court failed to acknowledge that defendant had previously made bizarre statements that led his first attorney to question whether defendant was competent to stand trial. Although the court found defendant competent to be tried, "[a] different standard applies with respect to competency to represent one's self." *People v McMillan*, 63 Mich App 309, 313; 234 NW2d 499 (1975). A defendant may be competent enough to work with counsel and stand trial and yet be mentally incompetent to knowingly, voluntarily, and intelligently waive his right to counsel or to manage " 'the basic tasks needed to present his own defense

-11-

without the help of counsel.' " *People v Brooks*, 293 Mich App 525, 542; 809 NW2d 644 (2011), vacated in part on other grounds 490 Mich 993 (2012), quoting *Indiana v Edwards*, 554 US 164, 175; 128 S Ct 2379; 171 L Ed 2d 345 (2007).

On this record, we are not satisfied that defendant knowingly, intelligently, and understandingly waived his right to counsel and proceeded pro se of his own free will. Accordingly, defendant is entitled to some type of relief. However, defendant's claims that he could not be prosecuted for felon-in-possession and felony-firearm and that he had a valid defense to those charges lack merit. Therefore, withdrawing his plea very well might not be in defendant's best interests.

## IV. SPECIFIED FELONY

Defendant contends that he was erroneously advised that his plea was conditional and that he would be permitted to challenge on appeal whether his underlying offense of first-degree reckless endangerment in violation of New York law was a specified felony for purposes of Michigan's felon-in-possession statute. Defendant continues to assert that reckless endangerment is not a specified felony and that the charges of felon-in-possession and felony-firearm should have been dismissed.

A "felony" under the felon-in-possession statute "means a violation of a law of this state, or of another state, or of the United States that is punishable by imprisonment for 4 years or more, or an attempt to violate such a law." MCL 750.224f(9)(b). MCL 750.224f(10)(a) defines a "specified felony," in relevant part, as a felony that includes as an element "the use, attempted use, or threatened use of physical force against the person or property of another, or that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Pursuant to NY Penal Law § 120.25, "[a] person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person."

Reckless conduct undertaken with depraved indifference to human life that creates a grave risk of death to another is consistent with conduct "that by its nature, involves a substantial risk that physical force against the person or property of another may be used." A review of New York cases affirming convictions and indictments for first-degree reckless endangerment uncovered cases where the defendant stabbed another, beat another (regardless of whether the victim was actually severely injured), fired a weapon at an occupied vehicle at a busy gas station, fired a handgun with conscious disregard for whether the gun was loaded, and caused a fire or explosion with the potential of injuring others. See *Matter of Marcus C*, 848 NYS2d 317; 46 AD2d 816 (2007); *People v Lynch*, 95 NY2d 243; 715 NYS2d 691; 738 NE2d 1172 (2000); *People v Moore*, 715 NYS2d 546; 277 AD2d 596 (2000); *People v Williams*, 594 NYS2d; 191 AD2d 234 (1993); *People v Koullias*, 465 NYS2d 748; 96 AD2d 869 (1983). The statutory elements fall in line and defendant made no offer of proof, and never even claimed, that his New York offense did not "by its nature, involve a substantial risk that physical force against the person or property of another may be used."

We discern no error in the court's legal determination that defendant's prior offense fell within the parameters of a specified felony.

## V.  ENTRAPMENT BY ESTOPPEL

Defendant contends that his plea cannot be deemed knowing and voluntary because he possessed a valid defense to the charges of felon-in-possession and felony-firearm—that his right to own firearms had been restored by the New York court system.

> The doctrine of entrapment by estoppel applies to preclude prosecution when a defendant establishes by a preponderance of the evidence (1) that a government official advised the defendant that certain illegal conduct was legal, (2) that the defendant actually relied on the government official's statements, (3) that the defendant's reliance was reasonable and in good faith given the identity of the government official, the point of law represented, and the substance of the official's statements, and (4) that, given the defendant's reliance, prosecution would be unfair. [*People v Pierce*, 272 Mich App 394, 399-400; 725 NW2d 691 (2006).]

Defendant's argument premised on the alleged restoration of his firearm rights did not constitute a valid defense in this case.  The New York certificate of relief from disabilities was not a pardon or expungement.  Defendant's New York conviction remains on his record.  The certificate also did not provide on its face that defendant's right to own or possess firearms had been restored.  As noted by the New York State Division of Criminal Justice letter, had defendant remained in New York, he would have been required to apply for a pistol permit like any other citizen and the licensing department would be permitted to consider the fact of and circumstances surrounding defendant's conviction.  There was no guarantee that defendant would have been permitted to carry a weapon.  Although defendant claimed that charges for illegally possessing firearms were dismissed against him in New York after his conviction but before his move to Michigan, he made no offer of proof in that regard.

Moreover, the state of Michigan is not bound by the state of New York's decision to restore defendant's right to own and possess arms.  Under our federal system, the several states may enact and enforce varying standards for recognizing when a felon has rehabilitated his right to keep and bear arms.  In Michigan, felons must apply to have their rights reinstated following the procedure set forth in MCL 28.424.  Defendant admitted that he had not followed this course.  No Michigan governmental official advised defendant that his right to own and possess firearms had been restored in the state of Michigan.  He was therefore not entrapped into believing his conduct was legal.

In the normal course, we would vacate or reverse the trial court's denial of defendant's motion to withdraw his plea based on the denial of his right to counsel in the days leading up to and at the plea hearing.  However, the errors defendant cites as invalidating his plea lack merit. Knowing this Court's position, defendant may wish to reconsider his plan to withdraw his plea.

-13-

Accordingly, rather than grant the substantive relief sought by defendant, we remand to the trial court to allow defendant to decide whether to withdraw his plea, with the assistance of counsel.

We remand but do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Jane M. Beckering