*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 23, 2022

Plaintiff-Appellant,

v

No. 353296
Macomb Circuit Court
LC No. 2005-003245-FC

ANTHONY JEROME DELEON,

Defendant-Appellee.

ON REMAND

Before: CAVANAGH, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

This case returns to this Court on remand from our Supreme Court, vacating this Court's decision in *People v DeLeon*, unpublished per curiam opinion of the Court of Appeals, issued June 10, 2021 (Docket No. 353296) *(DeLeon II)*, and directing this Court to address "whether or how the procedural bars of MCR 6.508(D)(2) and (3)(a) affect the outcome of this case." *People v DeLeon*, ___ Mich ___; 970 NW2d 325 (2022) (Docket No. 163380). We conclude that MCR 6.508(D)(2) and (3)(a) did not preclude defendant from raising the ineffective assistance of counsel argument asserted in his motion for relief from judgment, but that he has failed to overcome the presumption that his trial counsel's failure to call Dr. Herbert MacDonell to testify constituted sound trial strategy and failed to demonstrate a reasonable probability of a different result had Dr. MacDonell testified. Accordingly, we again reverse.

In *People v DeLeon*, unpublished per curiam opinion of the Court of Appeals, issued September 18, 2007 (Docket No. 269574) *(DeLeon I)*, this Court recited the factual background as follows:

> Defendant's convictions arise from the April 1998 shooting death of his wife, Karen DeLeon, who died from a single gunshot wound to the head. Police found several bags packed with the woman's clothing. Defendant claimed to be present at the time of the shooting and further claimed to hold his wife closely right after the shooting, but police found him clean and emotionless when they arrived

-1-

at the scene. Shortly after the shooting, the medical examiner certified the manner of death as "undeterminable." A toxicology report indicated that the decedent had consumed a large, possibly fatal, amount of Butalbital. The police file was closed in June 1998, because the police determined that there was no direct evidence that the decedent's death was anything other than a suicide. Much of the physical evidence was destroyed, including the decedent's numerous prescription medications and the clothing she was wearing at the time of her death. The case was later reopened in 2002, after defendant assaulted his live-in fiancée by wrestling her to the floor and telling her he was going to kill her. The assault was precipitated in large part by the fiancée's communication of her desire to end the relationship. In June 2005, defendant was charged with first-degree murder in connection with the decedent's death.

Testimony indicates that, at least in retrospect, some witnesses believed that defendant acted suspiciously on the night his wife died. There was also evidence that the decedent had a history of prescription drug abuse and a previous suicide attempt. Although testimony at trial portrayed defendant as controlling and insensitive toward the decedent, no one ever saw him physically assault the decedent, and she never complained to anyone of physical abuse. Evidence of defendant's 2002 assault of his fiancée was presented at defendant's trial. [*DeLeon I*, unpub op at 1-2.]

The jury convicted defendant of first-degree premeditated murder, MCL 750.316(1)(a), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to life imprisonment for the murder conviction and two years' imprisonment for the felony-firearm conviction.

Defendant appealed by right and moved to remand for a *Ginther*[1] hearing, arguing, in part, that his trial attorney, Salvatore Palombo, rendered ineffective assistance of counsel by failing to call Dr. MacDonell to testify. Dr. MacDonell was the director of the Laboratory of Forensic Science in Corning, New York. Defendant asserted that Dr. MacDonell was "the foremost authority in the science of bloodstain pattern analysis" and that he had spent days waiting in the courthouse hallway, but was never called to testify before he returned to New York because of a medical emergency involving his wife. Defendant maintained that there was no reasonable explanation for failing to call Dr. MacDonell to testify and that Palombo chose to call local witnesses before out-of-town witnesses who were present and waiting to testify. This Court denied defendant's motion to remand "for failure to persuade the Court of the necessity of a remand" at that time.[2]

This Court affirmed defendant's convictions. This Court determined, in relevant part, that Dr. MacDonell's testimony "would have added little beyond rehashing the [gunshot] residue

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *People v DeLeon*, unpublished order of the Court of Appeals, entered February 15, 2007 (Docket No. 269574).

report." This Court also rejected defendant's argument that Palombo should have called Dr. MacDonell to testify sooner, stating that "decisions about the order in which to present evidence and decisions about calling and questioning witnesses, generally are matters of trial strategy." *DeLeon I*, unpub op at 4.

In October 2018 defendant moved for relief from judgment and a *Ginther* hearing, again asserting that Palombo rendered ineffective assistance of counsel. Specifically, defendant argued that Palombo's representation to the trial court that Dr. MacDonell had to return to New York because of a medical emergency involving his wife was false. Defendant relied on Dr. MacDonell's affidavit stating that he had waited all day at the courthouse on January 18 and 19, 2006, but was not called to testify. Dr. MacDonell further averred:

> In the late afternoon of the 19th Mr. Palombo advised affiant that the case was going so well he was not going to call him as a witness. Affiant was astounded because he was there two days ready to explain the gunshot residue results while Palombo put on local witnesses ahead of him.· Affiant had never had an attorney who had him in the courthouse ready to testify and then be told to go home. Affiant was astounded to say the least. Affiant later learned that Mr. Palombo told the court that he had to leave because of a family emergency. That is not at all true, affiant was told me [sic] to go home as he was no longer needed.

The trial court granted defendant's motion for a *Ginther* hearing, and, following the hearing, granted defendant a new trial. The court acknowledged Palombo's testimony that he decided not to call Dr. MacDonell to testify both because trial was going well and because Dr. MacDonell had to leave due to a family emergency. The court determined, however, that Palombo's testimony contradicted his representation to the court during trial, which referenced only Dr. MacDonell's family emergency, and defendant's testimony that Palombo never discussed with him the matter of not calling Dr. MacDonell to testify. Thus, the court opined that Palombo's performance fell below an objective standard of reasonableness. Further, the court determined that there existed a reasonable probability of a different outcome if Dr. MacDonell had testified.

The prosecution applied for leave to appeal on the basis that the trial court's decision contravened the law-of-the-case doctrine because this Court determined in *DeLeon I* that defendant had not been denied the effective assistance of counsel. This Court granted the application and reversed the trial court's decision.[3] *DeLeon II*. Thereafter, our Supreme Court vacated this Court's decision and remanded, directing this Court to address "whether or how the procedural bars of MCR 6.508(D)(2) and (3)(a) affect the outcome of this case." *People v DeLeon*, ___ Mich ___; 970 NW2d 325 (2022) (Docket No. 163380).

We review de novo as a question of law issues involving the interpretation of court rules. *People v Blanton*, 317 Mich App 107, 117; 894 NW2d 613 (2016). "The same principles of statutory interpretation govern when interpreting and applying a court rule." *People v Walters*, 266 Mich App 341, 346; 700 NW2d 424 (2005). Accordingly, "our analysis begins with the

---

[3] Judge Tukel dissented, stating that he would vacate the trial court's order and remand for additional factfinding. *DeLeon II* (TUKEL, J., dissenting), unpub op at 3-5.

language of the court rule." *Id*. "If the plain and ordinary meaning of a court rule's language is clear, judicial construction is not necessary." *People v Howell*, 300 Mich App 638, 645; 834 NW2d 923 (2013).

When the trial court decided defendant's motion for relief from judgment on March 11, 2020, MCR 6.508 provided, in relevant part, as follows:[4]

> (D) The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

> * * *

> (2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;

> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

> (a) good cause for failure to raise such grounds on appeal or in the prior motion . . . .

> * * *

> The court may waive the "good cause" requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime. [MCR 6.508(D).]

MCR 6.508(D)(2) did not preclude defendant from raising his ineffective assistance of counsel argument in his motion for relief from judgment because he did not allege grounds for relief that were decided against him in a prior appeal or motion under MCR Subchapter 6.500. Defendant's motion for relief from judgment filed on October 23, 2018 was his first such motion filed in this case. In addition, this Court did not decide defendant's argument against him in *DeLeon I*. In that appeal, defendant argued that Palombo rendered ineffective assistance of counsel by failing to call Dr. MacDonell to testify despite the fact that he was present and waiting in the hallway outside the courtroom. Defendant asserted that Palombo's performance fell below an objective standard of reasonableness because he called local witnesses to testify before calling Dr. MacDonell to testify, which ultimately resulted in Dr. MacDonell having to return to New York without testifying because of a medical emergency involving his wife. Defendant did not assert

---

[4] Although MCR 6.508 was amended effective May 1, 2020, we must apply the version of the court rules in effect at the time that the trial court decided defendant's motion. See *In re Guardianship of Brosamer*, 328 Mich App 267, 272 n 1; 936 NW2d 870 (2019) ("All references in this opinion to the statute are to the version in effect when the trial court issued its order.")

-4-

in *DeLeon I* that Palombo told Dr. MacDonell that he could leave because trial was going well and his testimony would not be needed. Accordingly, this Court did not address that issue in *DeLeon I*.[5]

Likewise, MCR 6.508(D)(3)(a) did not preclude defendant from raising his argument in his motion for relief from judgment because the record fails to establish that he could have raised his argument on direct appeal or in a prior motion under MCR Subchapter 6.500. As previously stated, defendant's motion for relief from judgment filed on October 23, 2018 was his first such motion. In addition, defendant asserted in both his motion for relief from judgment and in his motion to appoint counsel for purposes of filing his motion for relief from judgment that neither he nor his appellate attorney was aware during his direct appeal that Palombo had told Dr. MacDonell to return to New York because his testimony would not be needed. Defendant testified at the *Ginther* hearing that he first discovered that Palombo's representation to the trial court that Dr. MacDonell had to return to New York because of a medical emergency involving his wife was untrue after Dr. MacDonell contacted his father at some point following defendant's trial. Defendant testified as follows:

> *Q*. When is the first time you learned that Dr. McDonald [sic] would not be a witness in the case?
>
> *A*. He called my father at home after he got back from another case and he told my father:
>
> > I found out what happened to your son. And he says: I'm sorry. If I would have taken the stand, I probably could have gotten him an acquittal.

It is unclear when Dr. MacDonell contacted defendant's father. At the *Ginther* hearing, defendant was not asked to clarify when that occurred, and Dr. MacDonell gave no indication in his affidavits regarding when he contacted defendant's father.[6] Although it appears unlikely that Dr. MacDonell would have contacted defendant's father years after defendant's trial concluded, the record fails to

---

[5] Because this Court did not decide in *DeLeon I* the ineffective assistance of counsel claim that defendant now asserts, the law-of-the-case doctrine, on which the prosecution relies, is inapplicable. The law-of-the-case "doctrine provides that an appellate court's decision regarding a particular issue is binding on courts of equal or subordinate jurisdiction during subsequent proceedings in the same case." *People v Herrera*, 204 Mich App 333, 340; 514 NW2d 543 (1994). The doctrine applies, however, "only if the facts remain substantially or materially the same." *People v Phillips*, 227 Mich App 28, 31-32; 575 NW2d 784 (1997). Because defendant relies on Dr. MacDonell's affidavit in which he denied that he had to return to New York because of a medical emergency and maintained that Palombo instead told him to leave because his testimony would not be needed, the facts at issue in defendant's motion for relief from judgment were not substantially or materially the same as those at issue in *DeLeon I*.

[6] Dr. MacDonell executed two virtually-identical affidavits, one dated October 20, 2016 and attached to defendant's motion to appoint counsel for the purpose of filing a motion for relief from judgment, and one dated November 20, 2017 and attached to defendant's motion for relief from judgment.

contradict defendant's assertion that he could not have raised his argument in his appeal of right. Moreover, nothing indicates that defendant or appellate counsel should have suspected that Palombo's assertion regarding the reason for Dr. MacDonell's return to New York was untrue or did not fully explain why he returned to New York without testifying. Accordingly, because the record fails to establish that defendant could have raised his argument on direct appeal, MCR 6.508(D)(3) did not preclude him from raising the argument in his motion for relief from judgment. Alternatively, defendant established "good cause" under MCR 6.508(D)(3)(a) for his failure to raise his argument on direct appeal because neither he nor his appellate counsel had any reason to suspect that Palombo's explanation regarding why Dr. MacDonell did not testify was untrue or not completely forthright.

Accordingly, we conclude that defendant overcame the procedural bars of MCR 6.508(D)(2) and (3)(a) and was therefore able to raise his ineffective assistance of counsel argument in his motion for relief from judgment. As in *DeLeon II*, however, we conclude that defendant failed to overcome the presumption that Palombo's decision not to call Dr. MacDonell to testify was a matter of sound trial strategy.

"A claim of ineffective assistance of counsel presents a mixed question of law and fact." *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011). "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review a trial court's findings of fact for clear error and review "de novo the ultimate constitutional issue arising from an ineffective assistance of counsel claim." *Brown*, 294 Mich App at 387.

In order to establish ineffective assistance of counsel, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there exists a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012) (citation omitted). "Effective assistance of counsel is presumed," and a "[d]efendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *People v Petri*, 279 Mich App 407, 410-411; 760 NW2d 882 (2008). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

Defendant has failed to overcome the presumption that Palombo's decision not to call Dr. MacDonell to testify was a matter of sound trial strategy. As stated in *DeLeon II*, Palombo offered numerous reasons for opting not to present Dr. MacDonell's testimony, including the fact that trial had proceeded well without the testimony, the prosecution had arranged for a well-respected Michigan State Police lieutenant to testify as a rebuttal witness to counter Dr. MacDonell's testimony, the lieutenant was present in the building, the lieutenant's testimony was the final evidence that the jury would hear before it began deliberating, and Palombo's assistant informed him that Dr. MacDonell had to return to New York because of a medical emergency involving his wife.

Further, defendant has failed to demonstrate a reasonable probability that, if Dr. MacDonell had testified, the result of the proceeding would have been different. Because Dr. MacDonell passed away before the *Ginther* hearing, the parties stipulated that he would have testified in accordance with his September 13, 2005 forensic report and October 18, 2005 addendum to his forensic report. In his forensic report and addendum, Dr. MacDonell was critical of Robert White's gunshot residue report and David Woodford's report indicating that the handgun should have had more blood on it if Karen had committed suicide. Because Woodford passed away before trial, Melinda Jackson testified in his stead as an expert regarding analyzing surfaces for the presence of blood. Woodford was Jackson's supervisor who trained her and worked with her for more than 19 years. Woodford analyzed the handgun and observed only a small amount of blood on the cylinder. Oakland County Medical Examiner Dr. Ljubisa Dragovic testified on defendant's behalf, however, that if the barrel of a gun is held tightly to a person's skin, it creates a tight seal that will prevent any material from blowing back around the outside of the weapon. Palombo argued during closing argument that the tight seal between the gun and Karen's head prevented blood from blowing back onto the weapon. Thus, Palombo offered a reasonable explanation for the lack of blood on the gun without Dr. MacDonell's testimony.

Further, in his forensic report and addendum, Dr. MacDonell was critical of Robert White's gunshot residue report. White was defendant's own expert witness, however, who testified on defendant's behalf as a gunshot residue expert, and Palombo sought the admission of White's report, which the trial court granted. Because Dr. MacDonell's testimony would have been critical of a fellow defense expert, defendant has failed to establish a reasonable probability that the result of the proceeding would have been different if Dr. MacDonell had testified.

Reversed.


/s/ Mark J. Cavanagh
/s/ Colleen A. O'Brien